FIRST UNION NATIONAL
BANK, Appellee

v.

F.A. REALTY INVESTORS CORP., F.A. Management Group, Inc., Cambridge Factors, Inc., Chilmark Equities, Inc., and Information Management Group, Inc., Appellants.

Superior Court of Pennsylvania.

Submitted April 1, 2002.
Filed Nov. 15, 2002.

720 

Jerome H. Lacheen, Philadelphia, for appellants.

Drew E. Aldinger, Philadelphia, for appellee.

Before: HUDOCK, J., CERCONE, P.J.E., and HESTER, J.

CERCONE, P.J.E.

¶ 1 Appellants appeal from the order docketed January 24, 2001 which entered judgment against them and granted Appellee's request to proceed with a sheriff's sale of Appellants' real property. After review, we affirm.

¶ 2 Appellants, F.A. Realty Investors Corporation and F.A. Management Group, Inc. are owners of a two-story row house

located at 220 North Peach Street in Philadelphia, Pennsylvania, hereinafter referred to as the "property." Appellants, Cambridge Factors, Inc., Chilmark Equities, Inc., and Information Management Group, Inc. are mortgagees for the property.[1] From 1989 to 1996 the real estate taxes on this property were unpaid, which resulted in tax liens being placed on the property by the City of Philadelphia and the School District of Philadelphia. In 1997, the city and school district sold a portfolio of delinquent tax liens, which included the liens on this property, to the Philadelphia Authority for Industrial Development ("PAID"). PAID subsequently sold these liens to Appellees.

¶ 3 Appellees commenced the instant action in the Philadelphia Court of Common Pleas on September 14, 2000 by filing a "Petition for a Rule to Show Cause Why Property Should Not be Sold Free and Clear of All Liens and Encumbrances." Appellees sought, in the petition, a court order for a judgment *in rem* against the Appellants and also to be allowed to sell the property at sheriff's sale. A hearing was set for December 5, 2000 on the petition. On October 25, 2000, and October 27, 2000, Appellees filed proofs of service with the Court of Common Pleas indicating that a copy of this petition, and the order setting the hearing date on the petition, had been served on all Appellants by regular and certified mail at the addresses listed for the parties, as recorded in the deed and mortgage books and listed on a tax certificate for the property. An additional proof of service was filed on November 16, 2000 indicating that on November 6th a copy of the petition and the order setting the hearing date on the petition was posted on the property, and that a copy was also provided at that time to an adult in residence at the property, one Louise Boggs.

¶ 4 On the date set for the hearing, Appellants requested a continuance, which the Trial Court granted. On December 11th, counsel for Appellants entered his appearance and filed preliminary objections to the petition asserting: 1.) that the claims were barred by the statute of limitations; 2.) that the actions should have been filed with the Philadelphia Municipal Court due to the amount in controversy and 3.) that because Appellants were corporate entities, Appellee was required to serve them in accordance with the Rules of Civil Procedure which it failed to do. Appellants also subsequently filed a written "response" to the petition on January 22, 2001.

¶ 5 Appellee filed an answer to the preliminary objections, and a hearing was ultimately held on both the petition and the preliminary objections on January 23, 2001. The Trial Court subsequently entered an order, docketed January 24, 2001, which overruled the preliminary objections and granted Appellee's petition. The order allowed the sheriff's sale to proceed, and also entered judgment in favor of Appellee in the amount of $5,647.51.

1. The business entities, F.A. Realty Investors, F.A. Management Group and Information Management Group are business entities created by one Steven Frempong. *See First Union Mortgage Corporation v. Frempong,* 744 A.2d 327 (Pa.Super.1999). Mr. Frempong has a long history of filing repeated litigation in state and federal courts involving himself and his various business entities. For a detailed history of such litigation, which has culminated in Mr. Frempong being barred from filing any action in any Federal District Court or state court against the city of Philadelphia, or commencing any action in Bankruptcy Court without first obtaining leave of court see *Stephen Frempong–Atuahene v. City of Philadelphia,* et al. 2000 WL 233216, 2000 U.S. Dist. Lexis 2053 (E.D.Pa.2000) and *First Union v. Frempong, supra.*

¶ 6 In its opinion the Trial Court has described the sequence of events which transpired next:

> On February 22, 2001 F.A.'s counsel arrived at the office of the Prothonotary of Philadelphia County to file a notice of appeal. Although counsel had the notice in hand, [the Trial Court] was informed by the Prothonotary that he did not have the [filing fee required by Pa. R.A.P. 905]. Believing he had no other option under Rule 902, Pa.R.A.P., the Prothonotary immediately date-stamped the notice of appeal as received on February 22, 2001. The Prothonotary proceeded to hold the notice of appeal aside until F.A.'s counsel arrived with the fee.

> Counsel did not appear to pay the fee until June 16, 2001. *See* receipt imprinted on notice of appeal attached as Exhibit A. Even though the fee was paid months late, our Prothonotary deemed the notice of appeal as filed as of February 22, 2001.

> \* \* \* \* \* \*

Trial Court Opinion, filed 6/29/2001, at 1–2. This appeal was then docketed in the Commonwealth Court, but it was transferred by the Commonwealth Court to our Court, *sua sponte*, due to the Commonwealth Court's lack of subject matter jurisdiction.

¶ 7 Appellant now presents three (3) issues for our review:

> A. Whether the court of common pleas of Philadelphia County ("the lower court") lacked jurisdictional authority to adjudicate and enter judgment in this case.

> B. Whether the lower court in adjudication of this case violated appellant['s] constitutional rights of due process, equal protection and uniformity clauses.

> C. Whether the lower court erred and abused its discretion in the adjudication of this case.

Appellant's Brief at 1.

¶ 8 In its opinion, the Trial Court has concluded that this appeal is untimely and should be quashed. Appellee also asserts this contention in their brief on appeal. The Trial Court reasoned, and Appellee now currently echoes that reasoning, that the notice of appeal was not perfected until the filing fee was paid. We must disagree, since Pa.R.A.P. 905(a) specifically provides that "Upon receipt of the notice of appeal the clerk shall immediately stamp it with the date of receipt, and that date shall constitute the date when the appeal was taken, which date shall be shown on the docket." Hence, under Pa.R.A.P. 905(a), the date on which the appeal was taken in this case was the date on which it was time stamped by the Prothonotary, February 22, 2001. This date was within thirty (30) days of the Trial Court's entry of its January 24, 2001 order allowing the sheriff's sale to proceed. Thus, the appeal is timely.

¶ 9 Both the Trial Court and Appellee focus on the provisions of Pa.R.A.P. 905(c) which states that an appellant "upon filing the notice of appeal shall pay any fees therefor (including docketing fees in the appellate court) prescribed by Chapter 27 (fees and cost in appellate courts and on appeal).") The Trial Court and Appellee contend that this provision establishes that the appeal is not perfected until the fee is paid. We must disagree. While we agree that Rule 905(c) imposes an absolute duty on an appellant to either pay the required filing fee, or to attempt to obtain leave to proceed *in forma pauperis* at the time when the notice of appeal is filed, a breach of that duty does not automatically render the appeal invalid. Under Pa.R.A.P. 902, an appeal is perfected merely if it is filed

within the time period allowed for filing an appeal under Pa.R.A.P. 903. The date of the appeal's filing, for purposes of Pa. R.A.P. 903, is established by Pa.R.A.P. 905(a). Thus, the perfection of the appeal does not depend in any way on the payment of the filing fee.

■ ¶ 10 Indeed, Pa.R.A.P. 902 specifically states that "Failure of an appellant to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but it is subject to such action as the appellate court deems appropriate ..." Reading all of these provisions together compels the conclusion that an appeal will not be rendered automatically invalid by an Appellant's *initial* failure to comply with the financial obligations of Pa.R.A.P. 905 and Pa.R.A.P. 2701. An appeal filed within the allowed time period without the requisite fee will still be considered valid.

■ ¶ 11 An appellate court certainly has the authority to dismiss an appeal on the basis of failure to tender the required fee; however, that authority is a discretionary remedy which the appellate court can impose if circumstances warrant. Dismissal is therefore not obligatory in all instances. Appropriate circumstances warranting dismissal of an appeal by an appellate court would be, for example, if the filing party unduly delays paying the requisite fee, or unduly delays seeking leave to appeal *in forma pauperis*. If also it has been demonstrated that a litigant has deliberately failed to remit a required filing fee, or exhibited a clear pattern of attempting to cause delay in legal proceedings by repeatedly filing appeals, and then failing to timely remit the appropriate fees, this Court will not hesitate to impose the sanction of dismissal, and any other sanctions that we deem appropriate.

¶ 12 In the case at bar, the circumstances of the delay surrounding the remission of the filing fee are disputed. Appellants claim that the filing fee was initially refused by a Philadelphia County Deputy Prothonotary, presumably because the deputy prothonotary believed Appellants to have been barred from filing any legal paperwork under the Federal Court order discussed, *supra.* Appellants assert that once they found out that Appellee had intended to execute the order for the Sheriff's sale, their counsel again sent a representative at that time to the Prothonotary's Office with the required fee, and the payment was accepted at that time.

¶ 13 Because of the procedural snafu in this matter the Trial Judge, through no fault of her own, was precluded from preparing a full opinion;[2] thus, we have no reviewable findings of fact on this particular issue, which would enable us to determine the truth or falsity of Appellants' assertions. We also have nothing of record before us, instantly, which establishes that Appellants deliberately failed to pay the required fee, or are engaged in a habitual pattern of filing appeals and then delaying payment of the fees. Although we are admittedly troubled by Appellants' failure to follow the correct procedures as mandated by the rules of appellate procedure, under these particular circumstances, based on the limited facts of record before us, we decline to dismiss the appeal because the fee has been paid, and our review has not been hampered in this instance. However, we wish to make abundantly clear that though we are not dismissing the instant appeal, we are not countenancing or endorsing the procedures

---

2. The Trial Judge was not served with a copy of the notice of appeal by Appellants as mandated by Pa.R.A.P. 906.

which were followed in this case in any way. As related above, we will, in the future, under appropriate circumstances, dismiss an appeal for a party's flaunting of the rules of appellate procedure.

¶ 14 We next consider whether the issues raised by Appellants have been rendered moot. On September 16, 2001 Appellants filed a bond with the Trial Court in the amount of $6,777.02. According to Appellee, on December 18, 2001 the Trial Court entered a consent order agreed to by Appellants and Appellee by which the bond monies were released to Appellee. The order further provided that the sheriff's sale of the property scheduled for December 19, 2001 would be discontinued since the amount due was paid in full, and the order specifically preserved Appellee's right to argue to our Court that the current appeal is moot. *See* Appellee's Brief at Exhibit B.[3]

¶ 15 With respect to the issue of when a case becomes moot, our Court has aptly stated the relevant legal standards in a prior case:

> As a general rule, an actual case or controversy must exist at all stages of the judicial process, or a case will be dismissed as moot. *In re Duran,* 769 A.2d 497 (Pa.Super.2001). "An issue can become moot during the pendency of an appeal due to an intervening change in the facts of the case or due to an intervening change in the applicable law." *In re Cain,* 527 Pa. 260, 263, 590 A.2d 291, 292 (1991). In that case, an opinion of this Court is rendered advisory in nature. *Jefferson Bank v. Newton As-*

sociates, 454 Pa.Super. 654, 686 A.2d 834 (1996).

*In re D.A.,* 801 A.2d 614, 616 (Pa.Super.2002) (*en banc*). "It is impermissible for courts to render purely advisory opinions." *Erie Ins. Exchange v. Claypoole,* 449 Pa.Super. 142, 673 A.2d 348, 352 (1996). "In other words, judgments or decrees to which no effect can be given will not, in most cases, be entered by this Court." *Id.*

¶ 16 Even so,

> [T]his Court will decide questions that otherwise have been rendered moot when one or more of the following exceptions to the mootness doctrine apply: 1) the case involves a question of great public importance, 2) the question presented is capable of repetition and apt to elude appellate review, or 3) a party to the controversy will suffer some detriment due to the decision of the trial court.

*In Re D.A., supra,* 801 A.2d at 616.

¶ 17 Appellees have argued that payment by Appellants of the amount of taxes due and related penalties has rendered all of Appellants issues moot. Appellee points out that since the sheriff's sale has been stayed and the judgment paid there is no longer any controversy, and it is not possible for the appellate court to grant any relief. Appellants counter by asserting that the issues are of great public interest and allege, without substantiation, that Appellee has "summarily obtained more than 750 judgments against the poor in Philadelphia County without any significant appeal for review in this Court." (sic) Reply Brief at 6. Appellants also assert

---

**3.** We remind Appellee that photocopying materials and appending them to the brief does not make them part of the certified record. *See e.g., In Re M.T., R.T., H.T.* 414 Pa.Super. 372, 607 A.2d 271, 275 (1992). We direct Appellee's attention to Pa.R.A.P.1926 which allows a party to supplement the certified record with materials necessary for our review. However since Appellants do not dispute the entry or specific terms of this order we will consider it.

that "this case involves an issue capable of repetition, yet evading review." *Id.*

¶ 18 While the judgment has been paid in this matter, and a consent order entered, we cannot agree that the matter is moot. The resolution of the question of whether the Trial Court's jurisdiction was proper could still impact the respective legal rights and obligations of the parties. If the court which entered the consent order that released the bond posted by Appellants and transferred the funds to Appellee had no jurisdiction in this matter, then its consent order was void and of no legal effect and it can be vacated. Also, the issues relating to the alleged lack of the Trial Court's jurisdiction and allegedly faulty service of the complaint were not explicitly waived by Appellants in acquiescing to the consent order, and they remain unresolved. Thus, for these reasons, and because the issues relating to service and jurisdiction are conceivably of great public interest to all property owners in the City of Philadelphia, we will address Appellants' claims.

¶ 19 Appellants first argue that Appellee improperly served their petition because they did not comply with Rules of Civil Procedure 401 and 402. This claim is meritless. Rules of Civil Procedure 401 and 402 govern service of writs of summons or civil complaints. *See* Pa.R.C.P. 401 ("Original process shall be served within the Commonwealth within thirty days after the *issuance of the writ or the filing of the complaint.*") What Appellee filed was not a praecipe for a writ of summons or a complaint, but rather a "Petition for a Rule to Show Cause Why Property Should Not be Sold Free and Clear of All Liens and Encumbrances." The manner of service of this particular pleading is specifically governed by 53 P.S. § 7193.2(a) which provides:

(a) In cities of the first class, notice of a rule to show cause why a property should not be sold free and clear of all encumbrances issued by a court pursuant to a petition filed by a claimant under section 31.2 [4] of this act shall be served by the claimant upon owners, mortgagees, holders of ground rents, liens and charges or estates of whatsoever kind as follows:

(1) By posting a true and correct copy of the petition and rule on the most public part of the property;

(2) By mailing by first class mail to the address registered by any interested party pursuant to section 39.1 of this act a true and correct copy of the petition and rule; and

(3) By reviewing a title search, title insurance policy or tax information certificate that identifies interested parties of record who have not registered their addresses pursuant to section 39.1 [5] of this act, the city shall mail by first class mail and either by certified mail, return receipt requested, or by registered mail to such addresses as appear on the respective records relating to the premises a true and correct copy of the petition and rule.

The city shall file an affidavit of service with the court prior to seeking a decree ordering the sale of the premises.

[4] 53 Pa.C.S.A. § 7283

[5] 53 P.S. § 7193.1.

53 P.S. § 7193.2.

¶ 20 Appellee assumed the city's interest in the tax liens by virtue of its purchase of them from PAID. Thus, Appellee was subjected to the same statutory mandates as the city would have been had it sought to sell the property for payment of the taxes. The record reflects that Appellee followed the statutory mandates regarding service of the petition scrupulously. Appellants

did not register a "notice of interest" to designate an address for service of process with the city, as allowed by 53 P.S. § 7193.1; thus, as mandated by 53 P.S. § 7193.2(3), Appellee reviewed a copy of the tax information certificate, which identified all interested parties of record, and then promptly sent, by certified and regular mail, a copy of the petition and the Trial Court's order setting the hearing date to every party. Appellee also posted a copy of the petition and order setting the hearing date on the premises. Affidavits detailing the manner of service were filed in the Trial Court prior to the hearing at which Appellee sought a decree allowing the premises to be sold at sheriff's sale. Appellee has therefore complied with the mandatory procedures governing notice, which are applicable to this type of proceeding.

¶ 21 Appellants nevertheless further contend that even if the above-referenced statutory provisions were followed, their due process rights were violated. This claim is likewise meritless. As our Supreme Court has stated: "[W]hile not capable of exact definition, the basic elements of procedural due process are adequate notice, opportunity to be heard, and the chance to defend oneself before a fair and impartial tribunal having jurisdiction of the case." *Katruska v. Bethlehem Center School District*, 564 Pa. 276, 767 A.2d 1051, 1056 (2001). The specific procedural steps mandated by 53 P.S. § 7193.2 guarantee that all such individuals in Appellants position receive adequate notice of the potential sale of their property to satisfy unpaid taxes. Additionally, 53 P.S. § 7193.3 provides an additional safeguard to ensure that if any interested parties did not receive notice, they are still able to contest the validity of the sale for lack of notice, within six (6) months of the sheriff's sale of the property. There is absolutely no ba-

sis of record to suggest that Appellants did not receive proper notice of these proceedings since, as the Trial Court found: "F.A.'s claim that the notices were mailed to the wrong address was not credible because F.A.'s counsel and its officer, Stephen Frempong, responded to the petition and appeared at the hearing." Trial Court Opinion, filed 6/29/2001, at 3.

¶ 22 Although Appellants were provided a hearing by the Trial Court before its order was entered allowing the sheriff's sale of the property to proceed, Appellants, nevertheless, challenge the jurisdiction of the Philadelphia Court of Common Pleas to conduct such a hearing. Appellants maintain that it is the Philadelphia Municipal Court which has jurisdiction over these matters, not the Court of Common Pleas. This challenge is likewise groundless.

¶ 23 Appellants argue that the Philadelphia Municipal Court has jurisdiction over this case under 42 Pa.C.S.A. § 1123(6) which provides:

### 1123. Jurisdiction and venue

(a) GENERAL RULE.—EXCEPT AS OTHERWISE PRESCRIBED BY ANY GENERAL RULE ADOPTED PURSUANT TO SECTION 503 (RELATING TO REASSIGNMENT OF MATTERS), THE PHILADELPHIA MUNICIPAL COURT SHALL HAVE JURISDICTION OF THE FOLLOWING MATTERS:

\* \* \* \* \* \*

(6) Civil actions wherein the sum demanded does not exceed $ 15,000 in matters involving judgments of real estate taxes and school taxes levied by cities of the first class.

However, Appellants neglect to consider subsection (b) of the statute which provides:

(b) *CONCURRENT AND EXCLUSIVE JURISDICTION.—THE JURISDIC- TION OF THE MUNICIPAL COURT UNDER THIS SECTION SHALL BE CONCURRENT WITH THE COURT OF COMMON PLEAS OF PHILA- DELPHIA COUNTY* EXCEPT WITH RESPECT TO MATTERS SPECI- FIED IN SUBSECTION (A)(2), AS TO WHICH THE JURISDICTION OF THE MUNICIPAL COURT SHALL BE EXCLUSIVE EXCEPT AS OTH- ERWISE PRESCRIBED BY ANY GENERAL RULE ADOPTED PUR- SUANT TO SECTION 503.

42 Pa.C.S.A. § 1123(b) (emphasis sup- plied). Hence, the Philadelphia Court of Common Pleas has concurrent jurisdiction with the Philadelphia Municipal Court over any civil action seeking recovery on a judg- ment for unpaid taxes when the amount sought to be recovered is less than $15,000.00.

¶ 24 Furthermore, this petition was filed pursuant to 53 P.S. § 7283 which provides that "in cities of the first class, whenever a claimant has filed its tax or municipal claim in accordance with the requirements of this act, it may file its petition in the court in which the proceeding is pending." Thus, under this statute it is clear that the court in which the original tax claim was filed may entertain a subsequently filed petition for a rule to show cause why the property should not be sold to satisfy the tax claim. Here the original tax claims were filed in the Philadelphia Court of Common Pleas, so Appellee's petition was properly filed there as well.

¶ 25 Since Appellants received timely notice of this petition, and were afforded the opportunity to contest the petition at a hearing in a court with proper jurisdiction, the procedure followed in this case ade- quately comported with the constitutional requirements of procedural due process. *C.f. Smith v. Beard,* 326 Pa.Super. 95, 473 A.2d 625, 628 (1984) ("This Common- wealth's petition practice affords a re- sponding party with notice and an opportu- nity to be heard before a rule absolute is entered.")

■ ¶ 26 Appellants have failed to ad- vance a coherent legal argument regarding their other claims of an alleged violation of their right to equal protection and the uniformity clause of the U.S. Constitution; hence, these claims are waived. *Efford v. Jockey Club,* 796 A.2d 370, 372 (Pa.Su- per.2002). Additionally Appellants ad- vance a specious and inflammatory claim that "In these cases [Appellee has] sought to use illegal and fraudulent means to ob- tain judgment." Appellant's Brief at 8. Appellants make unsubstantiated passing references to earlier legal proceedings not of record in an attempt to lend credence to this claim. Since we cannot consider mat- ters not of record, and since the claims of fraud and illegality are utterly unsupport- ed, they do not merit serious consider- ation.

¶ 27 Lastly Appellants challenge the Tri- al Court's alleged abuse of discretion for failing to allow them to file an answer after the Trial Court had overruled their prelim- inary objections. We disagree. As dis- cussed above, the petition Appellee filed in this matter was not a civil complaint that required a formal answer under the Rules of Civil Procedure. Appellants were af- forded the opportunity to respond to the rule to show cause in writing, which they did by filing a "response to the petition to show cause" on January 22, 2001, and they were also afforded the opportunity to pres- ent evidence and argument on the petition at a hearing. Since 53 P.S. § 7283 allowed the Trial Court, at the conclusion of the

hearing, to order that the property be sold at sheriff's sale, there was no abuse of discretion on its part in so ordering.

¶ 28 Order affirmed.[4]

**4.** Appellee's request for counsel fees and costs is hereby denied.