J-S73004-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| EDWARD DAMIAN STEWART | : | |
| | : | |
| Appellant | : | No. 1877 WDA 2017 |

Appeal from the Judgment of Sentence May 9, 2017
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s):  CP-02-CR-0007235-2016

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., and OLSON, J.

MEMORANDUM BY GANTMAN, P.J.:              **FILED MARCH 05, 2019**

Appellant, Edward Damian Stewart, appeals *nunc pro tunc* from the judgment of sentence entered in the Allegheny County Court of Common Pleas, following his jury trial convictions for rape of a child, involuntary deviate sexual intercourse ("IDSI") with a child, unlawful contact with a minor, indecent assault of a person under 13, endangering the welfare of a child ("EWOC"), and corruption of minors.[1]  We affirm.

The trial court opinion fully and accurately sets forth the relevant facts and procedural history of this case. Therefore, we have no reason to restate them.  Procedurally we add, Appellant timely filed a notice of appeal *nunc pro tunc* on December 15, 2017.  On December 21, 2017, Appellant filed a

_____

[1] 18 Pa.C.S.A. §§ 3121(c), 3123(b), 6318(a)(1), 3126(a)(7), 4304(a)(1), and 6301(a)(1)(ii), respectively.

voluntary concise statement of errors complained of on appeal per Pa.R.A.P. 1925(b).

Appellant raises one issue for our review:

DID THE TRIAL COURT ABUSE ITS DISCRETION WHEN IT PERMITTED THE COMMONWEALTH TO INTRODUCE AN AUDIOTAPE OF A CONVERSATION BETWEEN APPELLANT AND HIS EX-GIRLFRIEND, [VICTIM]'S MOTHER, [T.H.], IN WHICH HE DISCUSSED ENGAGING IN AN EXTRAMARITAL RELATIONSHIP WITH HER?

(Appellant's Brief at 3).

"The admissibility of evidence is at the discretion of the trial court and only a showing of an abuse of that discretion, and resulting prejudice, constitutes reversible error." *Commonwealth v. Ballard*, 622 Pa. 177, 197-98, 80 A.3d 380, 392 (2013), *cert. denied*, 573 U.S. 940, 134 S.Ct. 2842, 189 L.Ed.2d 824 (2014).

The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

*Commonwealth v. Goldman*, 70 A.3d 874, 878-79 (Pa.Super. 2013), *appeal denied*, 624 Pa. 672, 85 A.3d 482 (2014). "To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party." *Commonwealth v. Lopez*, 57 A.3d 74, 81

(Pa.Super. 2012), *appeal denied*, 619 Pa. 678, 62 A.3d 379 (2013).

After a thorough review of the record, the briefs of the parties, the applicable law, and the opinion of the Honorable Donna Jo McDaniel, we conclude Appellant's issue merits no relief. The trial court opinion discusses and properly disposes of the question presented. (**See** Trial Court Opinion, filed May 4, 2018, at 2-9) (finding: admission of evidence was within court's discretion and not unduly prejudicial; defense theory at trial was that Victim's mother convinced Victim to fabricate allegations to get revenge on Appellant for breaking up with Victim's mother and marrying someone else; in support of theory, Appellant's wife testified that Victim's mother had repeatedly harassed and threatened Appellant's wife; Commonwealth introduced jail phone call between Appellant and Victim's mother to rebut Appellant's wife's testimony; jail phone call contradicted defense's portrayal of Victim's mother as vengeful and unhinged, in turn calling into question defense theory of case). The record supports the trial court's rationale. Accordingly, we affirm on the basis of the trial court opinion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/5/2019

- 3 -

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
CRIMINAL DIVISION**

COMMONWEALTH OF PENNSYLVANIA

v.                                                    CC: 2016-07235

EDWARD STEWART,

Defendant

**OPINION**

The defendant has appealed from the judgment of sentence entered on May 9, 2017. However, a review of the record reveals that the Defendant has failed to present any meritorious issues on appeal and, therefore, the judgment of sentence should be affirmed.

The Defendant was charged with Rape of a Child,[1] Involuntary Deviate Sexual Intercourse with a Child,[2] Aggravated Indecent Assault,[3] Unlawful Contact with a Minor,[4] Indecent Assault of a Person Under 13,[5] Endangering the Welfare of a Child[6] and Corruption of Minors[7] in connection with a series of incidents between the Defendant and his girlfriend's then-11 year old daughter. A jury trial was held before this Court in February, 2017 and at the conclusion of the Commonwealth's case, the Defendant's Motion for Judgment of Acquittal was granted as to the Aggravated Indecent Assault charge only. The Defendant was found guilty of all remaining

---

[1] 18 Pa.C.S.A. §3121(c)
[2] 18 Pa.C.S.A. §3123(b)
[3] 18 Pa.C.S.A. §3125(b)
[4] 18 Pa.C.S.A. §6318(a)(1)
[5] 18 Pa.C.S.A. §3126(a)(7)
[6] 18 Pa.C.S.A. §4304(a)(1)
[7] 18 Pa.C.S.A. §6301(a)(1)(ii)

1

charges. He next appeared before this Court on May 9, 2017 and was sentenced to consecutive terms of imprisonment of seven and one half (7 1/2) to 15 years at the Rape of a Child and IDSI charges and one and one half (1 1/2) to three (3) years at the unlawful contact with a minor charge. Post-Sentence Motions Nunc Pro Tunc were filed on May 22, 2017 and were subsequently denied on June 1, 2017.

No further action was taken until December 1, 2017, when the Defendant filed a Post Conviction Relief Act Petition seeking the reinstatement of his appellate rights. This Court granted relief on December 12, 2017 and this appeal followed.

Briefly, the evidence presented at trial established that the Defendant began dating T. H. in 2011 and moved in with T. H. and her then 11-year old daughter Victim and her two other daughters in 2012. T. H. worked as a nurse's assistant at Mercy Hospital and worked varying shifts, but most often at night. Beginning when she was 11 and continuing until she was 14, at times when her mother was at work, the Defendant would take Victim into her mother's bedroom, make her take her clothes off and force her to have oral, vaginal and anal intercourse with him. This occurred multiple times in various homes that the family lived in from 2012 to 2015. After her mother and the Defendant broke up, Victim told her therapist and, shortly thereafter, her grandmother, what the Defendant had done.

On appeal, the Defendant raises several claims of error, which are addressed as follows:

1.     *Admission of Jail Call*

Initially, the Defendant argues that this Court erred in allowing the Commonwealth to play a recording of a telephone call between T. H. and the Defendant, who was then an inmate at

2

the Allegheny County Jail because it was not a prior bad act and its prejudice outweighed its probative value. His claim is meritless.

Generally, the "admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion." Commonwealth v. Drumheller, 808 a.2d 893, 904 (Pa. 2002). "In determining the admissibility of evidence, the trial court must decide whether the evidence is relevant and, if so, whether its probative value outweighs its prejudicial effect... 'Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding the existence of a material fact.'" Commonwealth v. Hawk, 709 A.2d 373, 376 (Pa. 1998).

Beginning in his opening statement, defense counsel presented the defense theory of the case, that Victim made up the allegations against the Defendant to get back at him for breaking up with her mother and marrying someone else. (See T.T. p. 33). During T. H.'s cross-examination, defense counsel attempted to attribute a statement to her, wherein she threatened to ruin his new wife's life after she found out the Defendant had married someone else:

Q. (Mr. Sweeney): Okay. Now, eventually not only did you and Mr. Stewart break up and you believe that he had a new girlfriend or some relationship possibly in New York, when did you find out that he actually had gotten married?

A. ( T. H. ): It was 2016

Q. 2016. Early in 2016?

A. Yes, when I - somebody had - a mutual friend of ours had told me that he had got arrested and said that his wife came down to bail him out.

Q. Let's - that's how you found out he was married?

A. Yes.

3

Q. Did you eventually have a conversation with his wife?

A. She end [sic] up calling me, yes.

Q. And you had a conversation with his wife?

A. Yes.

Q. And in that conversation, did you tell her that, "You ruined my life. I'm going to ruin yours."

A. No.

(T.T. pp. 67). Defense counsel's cross-examination of Victim centered on interactions between her mother and the Defendant after the break-up and whether her mother was angry at the Defendant. (See T.T. p. 130-132).

Thereafter, the Defendant presented the testimony of his wife, who testified that in February, 2016, Tierra Hall called her repeatedly in a harassing manner and made various threats against her:

Q. (Mr. Sweeney): Was this a male or female on the line?

A. (Appellant's Wife ): It was a lady.

Q. On the second call?

A. And so she said to me, When did you and Eddy get married? I said to her, Who are you? She said, I'm T. H., I'm his baby's momma.

She starts screaming in my ear. I said, Stop screaming in my ears. So I hung up my phone. She called me back and I answered. So she keep calling. She would curse me out. She would curse me that she's going to break up my life. I broke up hers. She would call me and ask Where's Eddy. Where's Eddy. And I would tell her, Stop calling my phone. I pay my own phone balls [sic]. Stop harassing me.

Q. So these pone calls continued sometime after, even after he was released?

A. Yes.

Q. And she's looking for him?

4

A.      So she was still calling me. At one point she called me and she said, Where is Eddy? I said, My husband have a phone. Stop harassing me.
She called me. She said, This is about my baby girl. So I said, If you have a conversation with my husband, you want to have a conversation with my husband about our baby girl, please call his phone. Stop harassing me.

Q.      Now, you had known that she and Eddy had a baby together who died shortly before -

A.      I found out afterwards.

Q.      Okay. And so does she say anything else in these conversations?

A.      She would still curse me out. She would curse me out. I ruined her life. At one point she cursed me out and said to me my husband doesn't want me. So I said my husband doesn't [sic] want me. She cursed me out. So I said, If he doesn't want me, why do I married to him.
She still would curse me out. She still would tell me the worse things, and at one point I said to her -

THE COURT: You know, Mr. Sweeney, I'm not sure why any of this is relevant.

MR. SWEENEY: We're going to get to the chase.

THE COURT: Good.

Q.      [Appellant's wife] did she eventually make a threat to you with respect to ruining your life?

A.      Yes. She said, You ruined my life and I'm going to ruin yours.
...
Q.      ~    ,                    did T. H. threaten you physically?

A.      She said if I come to Pittsburgh, she's going to whip my ass.

Q.      Did she threaten you with deportation?

A.      Yes, she did say that.

Q.      And this was because she believed you ruined her life?

A.      Yes.

(T.T. pp. 185-187, 196).

5

Thereafter, the Commonwealth sought to play a jail recording of a telephone call between

T. H. and the Defendant:

MR. GLEIXNER: Your Honor, may we approach briefly?

THE COURT: Yes.

(A discussion at sidebar was held as follows:)

MR. GLEIXNER: I'm very sorry to bring it up again and I apologize if it's a waste of the Court's time, but the majority of that testimony, as you noted, was not relevant. It was about jail calls. It was about what the victim's mother said.

The jail call I plan to offer in rebuttal is from February 11th of 2016. The witness just testified that her involvement with these jail calls was in February of 2016. It's a statement by the victim's mother that is directly contradictory to what she said on the stand.

MR. SWEENEY: Your Honor, I'd just like to revisit the issue. The majority of that testimony was not about jail calls.

The majority of the testimony was about calls that T. H. and Appellant's Wife either exchanged directly between the two of them.
The call between Mr. Stewart and [T. H.] from the jail doesn't go to her credibility whatsoever. It is simply -

MR. GLEIXNER: Your Honor, it does go to her credibility. If she's here saying this person is saying - acts during this time and I have a caller saying the complete opposite during the exact timeframe -

THE COURT: I'll allow it.

(T.T. p. 197-198).

The call was subsequently played as follows:

(The following is a transcription of Jail Call 34, dated February 11, 2016 at 10:25).

T. H. : Hello?

EDWARD STEWART: Hello?

T. H. : What?

EDWARD: Yo.

6

T. H.: Hello?

EDWARD: Yo, do you hate me?

FEMALE VOICE: I'm about to put the phone down. So if it hangs up then, um just call us later.

EDWARD: Alright. Hello?

T. H.: Hello?

EDWARD: Yea.

T. H.: What?

EDWARD: Do you hate me yo?

T. H.: You're married.

EDWARD: Huh?

T. H.: Wh, wh, wh, you're married.

EDWARD: What? What'd you say?

T. H.: No need to lie. No need to lie. You're married.

EDWARD: Man, listen. It's not like that.

T. H.: It doesn't matter and you, and you deserve to know that's the truth.

EDWARD: Huh?

T. H. It doesn't matter what you say. You, you lied to me. You lied to me.

OPERATOR: This call is from the Allegheny County Jail.

EDWARD: It's not my babies, yo. She had them already. If them was my babies, like I'm gonna keep it 100 with you.

T. H.: It doesn't matter.

EDWARD: Them were due in April.

T. H.: The thing about it is...

7

EDWARD: Them not my babies.

T.H. : The thing about it is you lied to me to, to me from the start. You lied to me from the start. So, you trying to tell the truth now is not gonna make a difference. You are married. I don't care what the situation is, what the circumstances is. You're married an you was living two double lives and you lied to me.

EDWARD: It's nothing though, like it's really nothing.

T.H : It doesn't matter. You lied. You lied to me. So you coming tot he truth about it now, it doesn't matter at this point. You lied to me and you're married.

EDWARD: And I wrote you a letter.

T.H. : I don't care.

EDWARD: What do you mean you don't care?

T.H. : I don't. We have so much dirt.

EDWARD: It's not like that yo. It's not even like that. I swear to God, it's not even like that.

T.H. : I don't care how it is. I don't care how it is. I don't care how it is. You was lying to me while you was going up there. You was lying to me. The Jamaican lied to me. He came in my house around my kids. He lied to me. I'm cool. I mean, if you wanna get the truth out, if you wanna get all the truth out with everything, you can get it out, but it's not going to make a difference at the end of the day.

EDWARD: Hey, like you're who I want though. So it don't matter.

T.H. : That doesn't even matter no more. That's never gonna happen...ever again.

EDWARD: It's ain't never gonna happen. *laughs*.

T.H. : You need to be with your wife. That's who you need to be with.

EDWARD: No, I don't. No...

T.H. : Your wonderful wife.

EDWARD: What?

8

T.H. : Once you got married to somebody else, this or that, like, it doesn't matter. You lied to me about everything you've been going. You've been doing all this. I'm cool. Everything came to the light. *unintelligible*.

EDWARD: Man, you're who I want yo. It doesn't matter, like, it doesn't matter.

_T.H. : It does matter.

EDWARD: I'm not with her or nothing.

(Playing of the jail call ended).

(T.T. p. 199-203).

"[T]he admission of rebuttal testimony is within the sound discretion of the trial court; and the appropriate scope of rebuttal evidence is defined by the evidence that it is intended to rebut. Where the evidence proposed goes to the impeachment of the testimony of his opponent's witness, it is admissible as a matter of right. Rebuttal is proper where facts discrediting the proponent's witness have been offered." Commonwealth v. Yocolanco, 169 A.3d 47, 56 (Pa.Super. 2017).

Here, the defense theory of the case was that T.H. convinced victim to make up the allegations to get revenge on the Defendant for breaking up with her. In support of that theory of defense, the Defendant's wife,                    , testified that T.H. repeatedly harassed and threatened her with physical violence and deportation and threatened to ruin her life. Through this testimony, T.H. was portrayed as vengeful, violent and unhinged. The jail call played for the jury, however, directly contradicted the defense's portrayal of T.H. as vengeful and unhinged, and so directly contradicted the defense theory of the case. The admission of the recording was within this Court's discretion and was proper under the circumstances. See Yocolanco, *supra*. This claim is meritless.

*2. Sufficiency of the Evidence - Unlawful Contact*

9

Next, the Defendant argues that the evidence was insufficient to support the conviction for unlawful contact. Again, this claim is meritless.

When reviewing a challenge to the sufficiency of the evidence, the court must determine "whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt...[An appellate court] may not weigh the evidence and substitute [its] judgment for the fact finder. In addition...the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding appellant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances...Furthermore, the Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." Commonwealth v. Lewis, 911 A.2d 558, 563 (Pa.Super. 2006).

Our Crimes Code defines Unlawful Contact with a Minor as follows:

*§6318. Unlawful contact with minor*

*(a)*     *Offense defined. – A person commits an offense if he is intentionally in contact with a minor, or a law enforcement officer acting in the performance of his duties who has assumed the identity of a minor, for the purpose of engaging in an activity prohibited under any of the following, and either the person initiating the contact or the person being contacted is within this Commonwealth:*

        *(1)*     *Any of the offenses enumerated in Chapter 31 (relating to sexual offenses)...*

*...(c)*     *Definition. – As used in this section, the following words and phrases shall have the meanings given to them in this subsection:...*

    *..."Contacts." Direct or indirect contact or communication by any means, method or device, including contact or communication in person or through an agent or agency, through any print medium, the mails, a common carrier or*

10

> *communication common carrier, any electronic communication system and any telecommunications, wire, computer or radio communications device or system.*

18 Pa.C.S.A. §6318.

The evidence discussed above is clearly sufficient to support the conviction for Unlawful Contact with a Minor. On multiple occasions beginning when she was 11 years old, the Defendant exposed his genitals to Victim and forced her to engage in oral, vaginal and anal intercourse with him, each of which would constitute prohibited conduct under Chapter 31 of the Crimes Code. In order to commit the intercourse, the Defendant necessarily had contact with Victim, which is the actual crime of unlawful contact. The Defendant's argument that the Commonwealth failed to establish that the contact was independent of the sexual offenses and did not result in sexual offenses misconstrues the fundamental nature of the crime of unlawful contact itself. "Unlawful contact with a minor 'is best understood as unlawful communication with a minor.'" Commonwealth v. Velez, 51 A.3d 260, 266 (Pa.Super. 2012). "The elements of this crime consist of intentionally, either directly or indirectly contacting or communicating with a minor *for the purpose* of engaging in a sexual offense... Once appellant contacts or communicates with the minor for the purpose of engaging in the prohibited activity, the crime of unlawful contact with a minor has been completed... The actor need not be successful in completing the purpose of his contact or communication with the minor." Commonwealth v. Morgan, 913 A.2d 906, 910 (Pa.Super. 2006). The evidence clearly established that the Defendant had contact with Victim for the purpose of engaging in the various sexual acts he performed on her. This claim is meritless.

*3.    Grading of Unlawful Contact*

Next, the Defendant argues that the Unlawful Contact charge was improperly graded as a first-degree felony. Again, this claim is meritless.

11

With respect to grading, Section 6318 states, in relevant part:

*§6318. Unlawful contact with minor*

*(b)*     *Grading. – A violation of subsection (a) is:*
      *(1)*     *an offense of the same grade and degree as the most serious underlying offense in subsection (a) for which the defendant contacted the minor; or*

      *(2)*     *a felony of the third degree;*

*whichever is greater.*

18 Pa.C.S.A. §6318.

As the record reflects, the Defendant was also convicted of Rape of a Child, a first-degree felony, and so the Unlawful Contact charge properly assumed the grading of a first-degree felony. Neither is the Defendant's argument that the jury was instructed improperly convincing, as this Court gave the suggested standard instruction. (It is of note that the Defendant failed to challenge the jury instruction, which he should have done if he was alleging an error therein. His failure to raise an independent challenge to the instruction reflects the lack of weight to be placed on that argument as part of the grading challenge). The record reflects that the Unlawful Contact charge was properly and appropriately graded as a first-degree felony and so this claim must also fail.

*4.*     *Denial of Counsel*

Finally, the Defendant argues that he "was left constructively without counsel" at his sentencing hearing. A review of the record reveals that trial counsel, Patrick Sweeney, Esquire, was present and did represent the Defendant at the sentencing hearing. Contrary to the Defendant's argument, a review of the record reveals that attorney Sweeney did engage in representation activities at the hearing. To the extent that the Defendant is challenging the nature and effect of Attorney Sweeney's representation, that claim should be couched in terms of ineffective assistance and is properly deferred until collateral review. See Commonwealth v. Grant, 812 A.2d 726 (Pa.

12

2002). Because this claim is not reviewable at this time, it should be dismissed pending collateral review.

Accordingly, for the above reasons of fact and law, the judgment of sentence entered on May 9, 2017 must be affirmed.

BY THE COURT:

_____ , J.

13