J-A05041-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| JOHN KELLEY AND TRICIA KELLEY | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| V. | |
| TODD HARR | |
| Appellant | No. 1332 WDA 2019 |

Appeal from the Order Entered July 30, 2019
In the Court of Common Pleas of Bedford County
Civil Division at No(s):
1008-2018

BEFORE:  BENDER, P.J.E., BOWES, J., and PELLIGRINI, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                **FILED APRIL 22, 2020**

Appellant, Todd Harr (Mr. Harr), appeals from the July 30, 2019 order of the Court of Common Pleas of Bedford County, which denied his request to appeal *nunc pro tunc* for failure to provide evidence of a breakdown in the court's operations.  After careful review, we reverse and remand for further proceedings consistent with this memorandum.

This matter stems from a civil action initiated by John Kelley and Tricia Kelley (the Kelleys) against Mr. Harr in the magisterial district at MDJ-57-3-01.  A judgment was entered on August 28, 2018, in the amount of $9,500.00, in favor of the Kelleys and against Mr. Harr.  On September 25, 2018, Mr. Harr filed a *pro se* appeal in the Court of Common Pleas of Bedford County, but failed to file a proof of service regarding his notice of appeal, as required

_____

[*]Retired Senior Judge assigned to the Superior Court.

under Pa.R.C.P.M.D.J. No. 1005b. Consequently, the trial court granted the Kelleys' praecipe to strike the appeal.

Mr. Harr subsequently obtained counsel and filed a motion to reinstate his appeal on December 19, 2018. The trial court denied the motion by order of court dated February 4, 2019. The order was docketed and sent out to the parties on February 5, 2019. Accordingly, Mr. Harr had until March 7, 2019 to file an appeal. **See** Pa.R.A.P. 903(a) (requiring notice of appeal to be filed within thirty days after the entry of the order from which the appeal is taken); **Reeves v. Middletown Athletic Ass'n**, 866 A.2d 1115, 1120 (Pa. Super. 2004) (explaining that an order is "entered" when it has been docketed and notice of the docketing has been given to the parties).

According to Mr. Harr, he mailed a notice of appeal to the office of the Bedford County Prothonotary on February 27, 2019, and it was timely received by the prothonotary on March 4, 2019. The notice was not time-stamped and docketed, however, until March 13, 2019, six days after the appeal deadline. As a result, by *per curiam* order dated April 30, 2019, this Court quashed Mr. Harr's appeal at 406 WDA 2019, without prejudice for him to seek an appeal *nunc pro tunc* in the trial court.

On May 10, 2019, Mr. Harr filed a motion for leave to appeal *nunc pro tunc* with the trial court, and alleged that the delay in the filing of his original notice of appeal was caused by a breakdown in the court's operations and non-negligent circumstances. In support of his claims, Mr. Harr attached a

declaration from his counsel's assistant, Karen Marraccini (Ms. Marraccini),

dated April 3, 2019, in which she averred the following:

> On or about February 25, 2019, I contacted the prothonotary of Bedford County to confirm the cost to file an appeal to the Superior Court. I spoke to a clerk and was advised that the costs would be $128.75[,] payable to [the] Bedford County [P]rothonotary and $90.25[,] payable to [the] Superior Court of Pennsylvania….
>
> On February 27, 2019, I mailed the notice of appeal to Bedford County to be filed[.]
>
> On March 4, 2019, I received a phone call from [Barbara Himmler (Ms. Himmler)] of the Bedford County [P]rothonotary indicating that the cost check of $128.75 was incorrect[,] and that the correct amount was $57.00. I advised [Ms. Himmler] that our office manager was out of the office on vacation and that she was responsible for issuing checks[,] and that the $57.00 check would not be able to go out until the following week. [Ms. Himmler] told me that would not be a problem. I then asked [her] if the notice of appeal would be filed because the deadline was approaching[,] and [she] told me that she [would] mark the notice of appeal as filed that very day, March 4, 2019. [Ms. Himmler] further indicated that she would then forward the $128.75 check back to my attention. Following my conversation with [her], I requested a check.
>
> On April 11, 2019, I mailed a check payable to [the] Bedford County [P]rothonotary[,] in the amount of $57.00. We then received the receipt for payment from [the] … prothonotary[,] as well as the incorrect check [in the amount] of $128.75

Motion for Leave, Exhibit 6 ("Declaration"), 5/10/19, at 1-2 (unnumbered;

unnecessary capitalization and references to attached documents omitted).

On June 4, 2019, the trial court held an evidentiary hearing on the

motion. At the hearing, the Kelleys did not concede to Ms. Himmler's

Declaration, but acknowledged that "if, in fact, what is alleged to have

happened happened[,] then we would concede [that] the [p]rothonotary's

[o]ffice should have docketed the appeal in a timely fashion…. But I have no idea what took place between the [p]rothonotary's [o]ffice and [Mr. Harr's] counsel's office." N.T. Hearing, 6/4/19, at 13. Because of the Kelleys' perceived objection to the declaration, Mr. Harr's counsel requested a continuance to allow him the opportunity to present testimony by Ms. Marraccini and Ms. Himmler. *See id.* at 14. The trial court indicated that it "would rather not continue [the hearing] to another date[,]" and suggested, rather, that Mr. Harr inquire with the prothonotary's office as to whether Ms. Himmler was available to "come up to testify" that day. *Id.*

Ms. Himmler appeared at the hearing later that day, as a witness for Mr. Harr. In response to her being shown the cover letter and envelope that accompanied Mr. Harr's notice of appeal,[1] Ms. Himmler admitted that the handwriting on the top of the letter was hers, and she stated: "I apparently received this and told them that they sent us the wrong amount. It should have been $57.00…. I received the check on [March] 13 of [20]19[,] in the amount of $57.00. And I returned the wrong check amount the same day." *Id.* at 18.[2] Ms. Himmler also confirmed that the envelope was post-marked

_____

[1] The cover letter dated February 27, 2019, and the envelope post-marked the same date, were admitted into evidence and marked jointly as "Defendant's 1." *Id.* at 15-16.

[2] We note that the trial court mistakenly indicated in its Pa.R.A.P. 1925(a) opinion that Ms. Himmler testified that she received the February 27, 2019 letter and the original check in the wrong amount on March 13, 2019, when, in fact, her testimony referred to receiving the *replacement* check in the

on February 27, 2019, but she could not recall on what date she had received the notice of appeal. *Id.* at 19-20. She explained that it is customary for the staff to write on the back of a notice of appeal the date that it is received, but Mr. Harr's appeal notice had no date written on its back.[3] *Id.* at 19.

On July 30, 2019, the trial court issued an order denying Mr. Harr's request to file an appeal *nunc pro tunc* on the grounds that Mr. Harr failed to produce any evidence to support the averment in his motion, and that he failed to meet his burden of proving a breakdown in the court's operations. Mr. Harr filed a timely notice of appeal on August 23, 2019, followed by a timely, court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Herein, Mr. Harr presents the following issue for our review:

> I.    Whether the trial court abused its discretion and/or erred as a matter of law in denying [Mr. Harr's] motion for leave to file an appeal *nunc pro tunc* when the court failed to determine when [his] notice of appeal was received by the prothonotary, whether a Pennsylvania Rule of Civil Procedure was violated, and whether non-negligent circumstances existed sufficient to constitute the allowance of a *nunc pro tunc* appeal?

Mr. Harr's Brief at 8 (unnecessary capitalization omitted).

Preliminarily, we note that:

_____

amount of $57.00 on that date. *See* Trial Court Opinion (TCO), 11/1/19, at 2; N.T. Hearing at 18.

[3] The only writing on the back of the notice of appeal was the check number for the $57.00 replacement check received from Mr. Harr. *Id.* at 20.

> "Allowance of an appeal *nunc pro tunc* lies at the sound discretion of the [t]rial [j]udge." **McKeown v. Bailey**, 731 A.2d 628, 630 (Pa. Super. 1999). This Court will not reverse a trial court's denial of a motion for leave to appeal *nunc pro tunc* unless there is an abuse of discretion. **Rothstein v. Polysciences, Inc.**, 853 A.2d 1072, 1075 (Pa. Super. 2004). "An abuse of discretion is not merely an error of judgment but is found where the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill will as shown by the evidence or the record." **Freeman v. Bonner**, 761 A.2d 1193, 1194-95 (Pa. Super. 2000) (internal quotation marks omitted).

**Fischer v. UPMC Northwest**, 34 A.3d 115, 120 (Pa. Super. 2011).

"Generally, a [t]rial [c]ourt may grant an appeal *nunc pro tunc* when a delay in filing is caused by extraordinary circumstances involving fraud or some *breakdown in the court's operations* through a default of its officers."

**Id.** (emphasis added).

> There is a breakdown in the court's operations where an administrative board or body is negligent, acts improperly or unintentionally misleads a party. Cases involving a breakdown in court operations often involve a failure on the part of the prothonotary to fulfill his or her ministerial duties, such as the filing of dispositions and other relevant information on the appropriate docket, or giving notice of these dispositions to interested parties.

**Id.** (internal citations and quotation marks omitted).

> Moreover,

> where an appeal is not timely because of non-negligent circumstances, either as they relate to [the] appellant or his counsel, and the appeal is filed within a short time after the appellant or his counsel learns of and has an opportunity to address the untimeliness, and the time period which elapses is of very short duration, and [the] appellee is not prejudiced by the delay, the court may allow an appeal *nunc pro tunc*.

*Amicone v. Rok*, 839 A.2d 1109, 1114 (Pa. Super. 2003) (internal citations omitted).

Here, Mr. Harr argues that the trial court erred in denying his motion for leave to file an appeal *nunc pro tunc*, as the prothonotary's failure to docket his notice of appeal on the date that it was received constituted an administrative breakdown, for which he was entitled to relief. Mr. Harr's Brief at 17. He avers that the trial court improperly disregarded the evidence he presented in support of his claim, without any explanation. *Id.* at 20. Additionally, Mr. Harr claims that the trial court abused its discretion in failing to find that the circumstances surrounding the filing of his notice of appeal constituted a non-negligent delay. *Id.* at 22.

We agree with Mr. Harr that the delay in the filing of his notice of appeal was the result of a breakdown in the court's operations. Pursuant to Pa.R.A.P. 905(a)(3), it is the prothonotary's duty to time-stamp a notice of appeal *immediately upon receipt* of the notice, and that date shall constitute the date that the appeal is taken.[4] We have consistently held that a prothonotary's

_____

[4] In *Commonwealth v. Williams*, 106 A.3d 583 (Pa. 2014), our Supreme Court explained:

> The use of the word "shall" in Rule 905(a)(3) leaves the lower court clerk no discretion in its application of the rule. Very simply, the lower court clerk must time-stamp a notice of appeal immediately upon receipt.
>
> The clerk of courts, therefore, lacks the authority to reject, as defective, a timely notice of appeal. To hold otherwise would repudiate the directive of [Pa.R.A.P.] 902 that a timely notice of

failure to time-stamp a notice of appeal upon receipt, in accordance with Rule 905(a)(3), constitutes a breakdown of the court's operations and entitles the petitioner to an appeal *nunc pro tunc*. **See Nagy v. Best Home Services, Inc.**, 829 A.2d 1166, 1168 (Pa. Super. 2003) (determining that the prothonotary's failure to time-stamp or docket a timely-filed, albeit flawed, notice of appeal upon receipt of the notice constituted a breakdown in the court's operations); **McKeown v. Bailey**, 731 A.2d 628 (Pa. Super. 1999) (concluding that the trial court abused its discretion in not granting the appellants' petition to appeal *nunc pro tunc* where the delay in filing the notice of appeal was caused by a breakdown in the court's operation, *i.e.*, the prothonotary's failure to time-stamp the notice of appeal upon receipt). Moreover, "the perfection of [an] appeal does not depend in any way on the payment of the filing fee." **First Union Nat'l Bank v. F.A. Realty Investors Corp.**, 812 A.2d 719, 723 (Pa. Super. 2002). "An appeal filed within the allowed time period without the requisite fee will still be considered valid." **Id.**

Thus, it is clear that in the present matter, Mr. Harr's notice of appeal should have been time-stamped immediately upon receipt by the prothonotary and considered filed on that same date. Instead, the record

---

appeal is self-perfecting. It would also contravene the plain language of Rule 905(a)(3), which unequivocally requires the clerk for the lower court to time-stamp a notice of appeal immediately upon receipt.

**Id.** at 588.

establishes that Ms. Himmler set the notice of appeal aside after determining that the accompanying filing fee was in the wrong amount, without first time-stamping it in accordance with Rule 905(a)(3). We acknowledge that the actual date of the prothonotary's receipt of the notice of appeal was not established with certainty. The record indicates, however, that it was likely received prior to the deadline of March 7, 2019 and, presumably, on or before March 4, 2019, the date of the phone call Ms. Marraccini reported to have received from Ms. Himmler.

Although Ms. Himmler could not specifically recall receiving Mr. Harr's notice of appeal or calling Ms. Marraccini on March 4, 2019, Ms. Marraccini's account of events is corroborated by the cover letter and envelope to the notice of appeal, which were admitted into evidence at the June 4, 2019 evidentiary hearing. According to Ms. Marraccini, when she told Ms. Himmler during the call that she would mail a check in the correct amount the following week, Ms. Himmler replied that "that would not be a problem … and … that she [would] mark the notice of appeal as filed that very day, March 4, 2019." **See** Declaration at 1. She also declared that Ms. Himmler indicated she would set the case aside to await the new check. **Id.** This corresponds with the envelope post-marked February 27, 2019, which contained Ms. Himmler's handwritten note, "waiting on check." **See** Defendant's 1.

Ms. Marraccini further indicated that, on March 11, 2019, she mailed a check payable to the Bedford County Prothonotary in the correct amount of $57.00, and that she subsequently received a receipt for this payment, along

with the original check in the amount of $128.75, via mail from the prothonotary. **See** Declaration at 1. This correlates with Ms. Himmler's handwritten note on the February 27, 2019 cover letter, which read: "Returned wrong amount[.] Should have been $57.00[.] Sent check on 3-13-19[.]" Defendant's 1.[5] Based on our review of the record, we conclude that the trial court erred in finding that Mr. Harr "failed to produce any evidence" in support of his motion. **See** TCO at 2. To the contrary, we deem Mr. Harr to have satisfied his burden of proving a breakdown in the court's operations.

Finally, taking into account this Court's decision to grant *nunc pro tunc* relief in **First Union Nat'l Bank**, **supra**, where no filing fee was paid,[6] it is abundantly clear that Mr. Harr's appeal should have been deemed valid and filed immediately upon receipt, regardless of whether it was accompanied by the proper filing fee. Ms. Himmler lacked the authority to reject the timely-

_____

[5] Ms. Himmler testified at the evidentiary hearing that the handwriting on both the February 27, 2019 cover letter and the corresponding envelope was hers. **See** N.T. Hearing at 18-19.

[6] In **First Union Nat'l Bank**, counsel for the appellant submitted a notice of appeal to the prothonotary's office with *no filing fee whatsoever*. Despite the failure to pay the filing fee, the prothonotary time-stamped the notice of appeal on the date it was received in accordance with the Pennsylvania Rules of Appellate Procedure, and then proceeded to hold the notice of appeal aside until the fee was paid. Even though the filing fee was not paid until almost *four months later*, we determined that the notice of appeal was properly deemed filed on the date it was originally received and time-stamped by the prothonotary. **Id.** at 722.

filed notice of appeal, even if she deemed it to be defective. *See Williams, supra*. We also find it worth noting that, upon learning of the mistake regarding the filing fee, Mr. Harr proceeded in a timely manner to mail a check in the correct amount, and that the original check mailed to the prothonotary was for an amount *substantially greater* than the actual requisite filing fee.

Based on the foregoing, we determine that the trial court abused its discretion in denying Mr. Harr's request for *nunc pro tunc* relief. "When a movant is entitled to a *nunc pro tunc* appeal because of a breakdown in court operations, the only additional requirement that the movant must demonstrate is that he pursued his motion for leave to appeal *nunc pro tunc* within a reasonable amount of time." *Fischer*, 34 A.3d at 123 n.7 (citing *Nixon v. Nixon*, 198 A. 154 (Pa. 1938) (stating that if the reasons for delay in appeal is due to the court, an appellant must appeal within a reasonable amount of time)). Instantly, Mr. Harr's appeal was quashed on April 30, 2019, and he filed his motion to appeal *nunc pro tunc* on May 10, 2019. We conclude that he acted in a reasonable amount of time by filing his motion within ten days of the quashal of his appeal. *See id.* (finding that the appellants acted within a reasonable amount of time by filing their motion for leave to appeal *nunc pro tunc* within five days of receiving a copy of the order quashing their appeal); *see also Amicone*, 839 A.2d at 1115-16 (determining that even though there was a breakdown in court operations, the movant was not entitled to *nunc pro tunc* relief where he waited more than four months to file his petition and offered no satisfactory explanation for the lengthy delay).

Given our determination that there was a breakdown in the court's operations, we deem Mr. Harr's argument that the delay in the filing of his notice of appeal was the result of non-negligent circumstances to be moot. Thus, we need not address the merits of this claim.

Accordingly, we reverse the trial court's July 30, 2019 order and remand this matter for proceedings consistent with this memorandum.

Order reversed. Case remanded. Jurisdiction relinquished.

Judge Bowes joins this memorandum.

Judge Pellegrini files a dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/22/2020