City of Philadelphia           :
                                :
        v.                      :
                                :

Estate of Thomas Labrosciano,   :
Estate of Marie Labrosciano,     :
and Rocco Labrosciano       :
                                :   No. 1178 C.D. 2017
Appeal of: Rocco Labrosciano   :   Argued: November 13, 2018

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON         FILED: December 18, 2018

Rocco Labrosciano (Appellant) appeals from the July 21, 2017 order of the Court of Common Pleas of Philadelphia County (trial court) denying his Motion to Set Aside Sheriff Sale (Motion to Set Aside) regarding a property located at 1731 South Mole Street, Philadelphia (Property). Appellant presents five claims of error in this appeal. Appellant claims that: (1) the trial court erred by not holding a hearing prior to issuing the decree permitting the sale of the Property; (2) Section 39.2 of the Municipal Claims and Tax Liens Act (MCTLA),[1] 53 P.S. § 7193.2, unconstitutionally violates the separation of powers clause of the Pennsylvania Constitution; (3) the trial court erred in determining that the testimony of a private

---

[1] Act of May 16, 1923, P.L. 207, *as amended*, 53 P.S. §§ 7101-7455.

process server established that the most public part of the Property had been properly posted; (4) the trial court erred in admitting third-party business records into evidence; and (5) the trial court erred by holding that the City of Philadelphia (the City) was not required to comply with Pennsylvania Rules of Civil Procedure Nos. 3129.1-2, 3181(a)(6) and 3190.

***Background and Procedural Posture***

Appellant has lived his entire life in the Property. Notes of Testimony (N.T.) 3/21/2017 at 13-19. During their lifetimes, Appellant's parents, Marie and Thomas Labrosciano, were the record owners of the Property. N.T. 3/21/2017 at 13 & 31. Appellant's mother passed away intestate in February 1988 followed by Appellant's father, also intestate, in June 2002, leaving Appellant as the Property's legal owner. *Id.* at 14 & 30-31. Although the legal owner, Appellant never registered or recorded his ownership interest in the Property. *Id.* at 30 & 38.

While the Property's real estate taxes were paid prior to 2011, the taxes went unpaid in 2011, 2012 and 2013. N.T. 3/21/2017 at 31-32. As a result, the City filed a claim for unpaid real estate taxes against the Property. Thereafter, on March 10, 2015, the City's law department real estate tax collection co-counsel, GRB Law (GRB), mailed a pre-foreclosure notice to the Property that explained that the City intended to commence foreclosure proceedings against the Property for the outstanding tax balance.[2] *Id.* at 47 & 49. In response, on March 16, 2015, Appellant telephoned GRB and requested a payment plan to rectify the Property's delinquent

---

[2] The total amount of back taxes and interest due on the Property at that time was $2,537.67. *See* City's Tax Sale Petition, filed April 14, 2015 (Tax Sale Petition) at p. 2; N.T. 3/21/2017 at 60.

2

taxes.  *Id.* at 48.  As a result of this telephone call, GRB forwarded to the Property an application for an Owner Occupied Payment Agreement (OOPA), a statement of the taxes owed, and a Taxpayer Assistance Brochure.  *Id.* at 48-49.  Appellant did not return the OOPA application.

Receiving no response to the OOPA application, on April 14, 2015, the City filed a Tax Sale Petition against the Property seeking to collect the delinquent real estate taxes (Tax Sale Petition).  *See* Tax Sale Petition.  The City included with the Tax Sale Petition a Tax Information Certificate (TIC) that identified all interested parties and their addresses, and listed Thomas and Marie Labrosciano as owners of the Property based on available property records.  *Id.*

On April 25, 2015, the trial court issued a Rule to Show Cause why a decree should not be entered allowing the sale of the Property (Rule to Show Cause) and directing interested parties to file an answer to the Tax Sale Petition within 20 days of service of the Rule to Show Cause or face the possibility that the Property may be scheduled for a sheriff's sale.  *See* Rule to Show Cause.  The Rule to Show Cause did not schedule or otherwise include information regarding a hearing on the Tax Sale Petition or the Rule to Show Cause.  *Id.*

The City served copies of the Rule to Show Cause, together with the Tax Sale Petition, on Thomas Labrosciano, Marie Labrosciano, and also on the "current resident" of the Property via first-class mail addressed to the Property on June 17, 2015 and via certified mail also addressed to the Property on June 12, 2015. *See* Affidavit of Service of Mailing Petition and Rule, filed June 19, 2015 (Affidavit of Mailing); Affidavit of Posting, filed June 23, 2015 (Affidavit of Posting); N.T. 3/21/2017 at 64-66.  Additionally, a private process server posted the Rule to Show Cause and the Tax Sale Petition onto the "most public part" of the Property on June

3

20, 2015. *See* Affidavit of Posting; N.T. 3/21/2017 at 7-8 & 10. The City filed its Affidavit of Mailing and Affidavit of Posting on June 19, 2015 and June 23, 2015, respectively.

Also in June of 2015, Appellant submitted an incomplete OOPA application to GRB. N.T. 3/21/2017 at 49-50. The submitted OOPA application was missing both proof of residency and proof of property ownership. *Id.* at 50. Because the OOPA application was incomplete, on June 15, 2015, GRB returned the application to Appellant together with a request for additional information/documentation. *Id.* at 51. Neither Appellant nor anyone on his behalf returned a completed OOPA application to GRB or the City. *Id.* at 52.

On June 29, 2015, Appellant left a telephone message with GRB, which returned his call on the same day, but was unable to reach Appellant or leave him a voicemail message. N.T. 3/21/2017 at 52. On August 4, 2015, Appellant again called GRB and was informed that, although he had no payment plan in place, he could still make payment arrangements. *Id.* at 52-53.

In early August 2015, still having received no additional proof of residency and proof of ownership documentation from Appellant, GRB mailed Appellant an OOPA application denial letter. N.T. 3/21/2017 at 53. In response, Appellant again telephoned GRB on August 10, 2015. *Id.* at 53-54. GRB again advised Appellant of the documentation required to complete his OOPA application. *Id.* The following day, on August 11, 2015, GRB mailed Appellant a new OOPA application and advised him to either mail the required information or deliver it to GRB's office in person. *Id.* at 54-55.

4

On August 28, 2015, the trial court entered a decree authorizing the sale of the Property without holding a hearing to determine the City's strict compliance with the service requirements of the MCTLA. *See* Decree dated August 28, 2015.

In early September of 2015, GRB sent a final notice before sheriff's sale to the Property. N.T. 3/21/2017 at 55. The notice included a response deadline of September 30, 2015, with a warning that a sheriff's sale could be scheduled for the Property if Appellant failed to respond to the notice by that date. *Id.* On September 24, 2015, Appellant left a voicemail message claiming he had faxed the OOPA application and supporting documentation to GRB, but had not received a confirmation of the transmission. *Id.* GRB did not receive a faxed OOPA application or supporting documents, and so telephoned Appellant to advise him to present to GRB's office on September 29, 2015 to turn in the OOPA application and documentation. *Id.* at 56. Appellant did not present to GRB's office on September 29, 2015. *Id.*

Appellant next telephoned GRB on October 2, 2015. N.T. 3/21/2017 at 56. He informed GRB that he intended to present to GRB's office in person later that day and promised to bring with him the completed OOPA application and supporting documentation. *Id.* Appellant did not present to or otherwise contact GRB on October 2, 2015. *Id.* Instead, starting on October 19, 2015, despite having no formal payment plan in place, Appellant began mailing GRB money order payments of $38.00 towards his delinquent taxes. *Id.* at 23. These payments were not part of a formal payment plan and no one at GRB instructed Appellant to submit these payments. *Id.* at 57 & 61. After seven such payments between October 19, 2015 and April 2016, Appellant ceased sending the $38.00 money orders and made

5

no payments between April 2016 and the ultimate sale of the Property on September 15, 2016. *Id.* at 56.

On July 19, 2016, GRB scheduled the sheriff's sale of the Property for September 15, 2016 and sent three notices regarding the sheriff's sale to the Property. *See* Affidavit of Service dated July 19, 2016; N.T. 3/21/2017 at 66-67. The notices were addressed to Thomas Labrosciano, Marie Labrosciano,[3] and "Current Occupant / Tenant" of the Property and were sent via first-class mail. *See* Affidavit of Service dated July 19, 2016; N.T. 3/21/2017 at 66-67. In addition to a notice of sale, these notices each contained copies of the trial court's August 28, 2015 decree authorizing the sale of the Property and the sheriff's handbill detailing the date and place of the scheduled sheriff's sale. *See* Affidavit of Service dated July 19, 2016; N.T. 3/21/2017 at 67-68. The notices were not returned to GRB. N.T. 3/21/2017 at 68.

Appellant contacted GRB again on September 14, 2016, the day before the Property's scheduled sheriff's sale. N.T. 3/21/2017 at 57. Appellant was aware at that time that a sheriff's sale of the Property was scheduled for the following day. *Id.* at 58. Appellant told GRB that he had been in the hospital and needed to create a payment plan. *Id.* at 57-58. GRB again informed Appellant of the documents necessary to apply for an OOPA and advised Appellant that he needed to present to GRB's office that day – September 14, 2016 – to avoid the sheriff's sale scheduled for the following day, September 15, 2016. *Id.* at 57-58 & 61. Appellant did not present to GRB's office on September 14, 2016. *Id.* at 58. Appellant presented to GRB's office at 1:18 p.m. the following day, September 15, 2016, but by that time the sheriff's sale of the Property was complete. *Id.*

---

[3] The notices sent to Thomas and Marie Labrosciano individually also stated "with Notice to Heirs & Assigns." *See* Affidavit of Service, dated July 19, 2016; N.T. 3/21/2017 at 66.

Third-party purchaser Dee Vaar LLC purchased the Property at the September 15, 2016 sheriff's sale for $80,000.00. *See* Sheriff's Deed, N.T. 3/21/2017 at 47-48. The sheriff's deed conveying the Property was acknowledged on October 3, 2016 and recorded on October 13, 2016. *See* Sheriff's Deed. On December 29, 2016, Appellant filed the Motion to Set Aside.[4] *See* Motion to Set Aside Sheriff's Sale. After the City and the third-party purchaser filed responses to the Motion to Set Aside, the trial court conducted a hearing on the Motion to Set Aside on March 21, 2017. *See* N.T. 3/21/2017. On July 21, 2017, the trial court entered an order denying the Motion to Set Aside, and Appellant timely appealed to this Court on August 18, 2017. *See* Trial Court Order dated July 21, 2017; Notice of Appeal.

*Discussion*

Appellant first claims[5] that the trial court erred by not holding a hearing prior to issuing the August 28, 2015 decree allowing for the sale of the Property. *See* Appellant's Brief at 19-27. Appellant claims that the MCTLA requires a hearing to determine the City's strict compliance with the MCTLA's service requirements and the veracity of the claims of a tax sale petition prior to the issuance of a decree authorizing the sale of a property. *Id.* at 19-25. Appellant argues that the trial court's failure to conduct such a hearing constitutes reversible error. *Id.* We agree.

---

[4] Appellant also filed a Petition to Intervene, which the trial court granted by order dated April 7, 2017. *See* Trial Court Order, April 7, 2017.

[5] "This Court's review of a trial court's order in a tax sale matter is limited to determining whether the trial court erred as a matter of law, rendered a decision that is unsupported by the evidence, or abused its discretion." *City of Philadelphia v. Rivera*, 171 A.3d 1, 4 n.7 (Pa. Cmwlth. 2017) (quoting *City of Phila. v. Auguste*, 138 A.3d 697, 700 (Pa. Cmwlth. 2016)).

7

Section 31.2 of the MCTLA, under which the City filed its Tax Sale Petition in this matter, outlines the procedural steps the City and the trial court must observe prior to approving a sheriff's sale for a property that is the subject of a City tax claim. *See* 53 P.S. § 7283(a). Section 31.2 provides, in pertinent part, as follows:

> **§ 7283. Cities of first class; recovery of judgment; sale free from claims**
>
> (a) . . . [I]n cities of the first class, whenever a claimant has filed its tax or municipal claim in accordance with the requirements of this act, it may file its petition in the court in which the proceeding is pending, setting forth the facts necessary to show the right to sell, together with searches or a title insurance policy, showing the state of record and the ownership of the property, and of all tax and municipal claims, mortgages, ground rents or other charges on, or estates in, the land, as shown by the official records of the city or county, or the political subdivision in which the real estate is situate, and thereupon the court shall grant a rule upon all parties thus shown to be interested, *to appear and show cause why a decree should not be made that the property be sold, freed and cleared of their respective claims, mortgages, ground rents, charges and estates. If upon a hearing, the court is satisfied that service had been made of the rule upon the parties respondent* in the manner provided in this act for the service of writs of scire facias to obtain judgments upon tax and municipal claims, and that contemporaneously with the service of the rule on the parties respondent notice of the rule has been published by the claimant in at least one newspaper of general circulation in the county, and in a legal periodical published therein, if any, and that the facts stated in the petition be true, it shall order and decree that the property be sold at a subsequent sheriff's sale at a time to be fixed thereafter by the claimant, clear of all claims, liens, mortgages, ground rents, charges and estates, to the highest bidder at such sale[.]

53 P.S. § 7283(a) (emphasis added).

Broken down into its constituent parts, in cases where the City has filed a tax claim in accordance with the MCTLA, Section 31.2 allows the City to request that the trial court grant it permission to sell the property through the filing of a petition that outlines the City's right to sell the property, the ownership of the property, and all parties with an interest in the property. *See* 53 P.S. § 7283(a). Upon the filing of such a petition by the City, Section 31.2 requires the trial court to issue a rule upon all interested parties to show cause why the trial court should not grant the City's petition and issue a decree allowing the property in question to be sold at a sheriff's sale free and clear of all claims, mortgages, ground rents, charges, and estates. *Id.* Once the trial court issues such a rule to show cause, the City must then serve the tax sale petition and the trial court's rule upon all interested parties pursuant to the specific posting and mailing service requirements mandated in MCTLA Section 39.2.[6] *Id.* Additionally, Section 31.2 requires that the trial court conduct a hearing to determine whether: (1) the City has properly served the parties respondent with a tax sale petition and the court's rule to show cause why a property should not be sold at a sheriff's sale; (2) the City has published notice of the trial court's rule to

---

[6] MCTLA Section 39.2, being later-enacted, has supplanted the Section 31.2 requirement that tax sale petitions and rules to show cause be personally served in the manner required for service of writs of *scire facias*. *See In re Blaylock*, 394 B.R. 359, 370 (Bankr. E.D. Pa. 2008). Section 39.2 now specifically requires that, after reviewing a title search, title insurance policy, or tax information certificate that identifies interested parties of record who have not registered their addresses, the City must serve a property's interested parties by (1) posting a true and correct copy of the petition and rule on the most public part of the property; (2) mailing by first-class mail a copy of the petition and rule to the address registered by any interested party; and (3) by mailing a copy of the petition and rule by first-class mail and either certified or registered mail to any interested unregistered parties discovered through the review of a title search, title insurance policy, or tax information certificate. *See* 53 P.S. § 7193.2(a).

show cause in both an appropriate newspaper and an appropriate legal periodical; and (3) the facts stated in the tax sale petition are true. *Id.*

As this Court has recognized, the purpose of a sheriff's sale under the MCTLA "is not to strip the owner of his or her property but to collect municipal claims." *City of Philadelphia v. Manu*, 76 A.3d 601, 606 (Pa. Cmwlth. 2013). "The collection of [real estate tax] claims may not be implemented without due process of law guaranteed by the United States and Pennsylvania Constitutions." *Id.* "Strict compliance with the service requirement protects the procedural due process rights of all interested parties to notice and an opportunity to be heard and also guards against deprivation of property without substantive due process of law." *Id.* (citing *First Union Nat'l Bank v. F.A. Realty Investors Corp.,* 812 A.2d 719, 726 (Pa. Super. 2002)). "Similarly, the requirement that the court hold a hearing to determine the accuracy of the facts in the City's [tax sale] petition is an important due process safeguard." *Id.* This Court has recognized that these due process protections are particularly important in Section 31.2 petitions, where the City seeks permission to sell properties for delinquent taxes via petition and not upon a judgment entered on a lien in the normal course of civil court proceedings. *Id.*

In addition to providing necessary due process safeguards to interested parties, Section 31.2 hearings represent jurisdictional prerequisites to a trial court's ability to authorize the sale of properties at sheriff's sales. As this Court has explained:

> Proper service of a petition for tax sale and a rule to show cause is a prerequisite to a court acquiring personal jurisdiction over a defendant. Failure to strictly comply with the service requirement deprives the court of jurisdiction to authorize a sheriff's sale.

10

*Manu*, 76 A.3d at 605 (internal quotations and citations and quotations omitted).

To ensure that the court meets this jurisdictional prerequisite, "[b]efore granting a petition for sale, the court must make an independent inquiry regarding the city's strict compliance with the service requirement." *Manu*, 76 A.3d at 605 (internal quotations omitted). The plain language of Section 31.2 (*i.e.*, the phrase "If upon a hearing") requires this "independent inquiry" to consist of the trial court conducting an actual hearing at which the City must enter into evidence proof of its strict compliance with the MCTLA's service and publication requirements and proof of the truth of the matters asserted in its tax sale petition, and at which interested parties may challenge the City's evidence. *See* 53 P.S. § 7283(a). In the absence of such a hearing, the trial court lacks jurisdiction to issue a decree authorizing a sheriff's sale. *Manu*, 76 A.3d at 605; 53 P.S. § 7283(a).

Here, the trial court issued the Rule to Show Cause on April 25, 2015 and the City filed the Affidavit of Mailing on June 19, 2015 and the Affidavit of Posting on June 23, 2015. On August 28, 2015, the trial court issued the Decree authorizing the sale of Property at a sheriff's sale. Prior to issuing the Decree, the trial court did not schedule or conduct a Section 31.2 hearing during which it required the City to prove the veracity of the claims contained in the Tax Sale Petition or the City's strict compliance with the MCTLA's service requirements. Because the trial court failed to engage in an independent inquiry into the City's strict compliance with the MCTLA's Section 39.2 service requirements by conducting the required Section 31.2 hearing, the trial court lacked jurisdiction to authorize the sale of the Property at a sheriff's sale. *See Manu*, 76 A.3d at 605.

We do not agree with the City's suggestion or the trial court's conclusion that Appellant's failure to file an answer to the Tax Sale Petition made a

11

Section 31.2 hearing unnecessary. *See* City's Brief at 11-17; Trial Court Opinion at 6-8. The Section 31.2 requirement that a trial court hold a hearing operates independent of whether any party has filed an answer to a tax sale petition. Logically, Section 31.2 requires the City to prove its strict compliance with the MCTLA's service requirements regardless of whether any party has answered in order to prove that interested parties knew about the action and had the opportunity to answer in the first place. The fact that no party filed an answer to the Tax Sale Petition removes neither the obligation of the trial court to hold a Section 31.2 hearing nor the obligation of the City to create a record at that hearing evidencing its strict compliance with the MCTLA's service and publication requirements and proving the facts alleged in its petition. Section 31.2 requires that the trial court conduct a hearing wherein the City satisfies the trial court that it has strictly complied with the MCTLA's mandated and specific service requirements and further proves the veracity of facts alleged in a tax sale petition. *See* 53 P.S. § 7283(a). This requirement is intended to protect the due process interests of individuals whom the City seeks to dispossess of their property interests by petition alone. *Manu*, 76 A.3d at 606.

The trial court and the City correctly note that facts alleged in a tax sale petition not denied in an interested party's answer shall be taken by the court as true[7] and thus can dispense with the "narrow factual inquiry" required to determine the truth of the facts stated in the petition. *City of Philadelphia v. Robinson*, 123 A.3d 791, 798 (Pa. Cmwlth. 2015). However, even taking the facts alleged in the Tax Sale Petition as true does not satisfy the City's obligation to prove its strict compliance with the MCTLA's *service requirements*. The allegations of the Tax

_____
[7] *See* Section 35 of the MCTLA, 53 P.S. § 7189.

12

Sale Petition consist of statements regarding the City's efforts to file claims for delinquent taxes, to obtain correct statements of taxes, and to obtain a correct Tax Information Certificate for the purpose of identifying interested parties to the Tax Claim Petition. *See* Tax Sale Petition. The Tax Sale Petition itself makes no allegations of fact regarding the *service*, via mailing or posting, of the Tax Sale Petition or the trial court's Rule to Show Cause, which had not issued at the time the City filed the Tax Sale Petition. *Id.*

Additionally, although filed and on the docket of this matter, the City never entered its Affidavit of Service by Mail or Affidavit of Posting into evidence at a Section 31.2 hearing where they could have been challenged.[8] To be sure, while such a hearing could be extremely brief,[9] Section 31.2 still requires a hearing to (1) allow an interested party the opportunity to challenge the City's service compliance averments, and (2) provide the trial court the evidentiary basis to make its findings of fact regarding the City's compliance with the service requirements and the veracity of the underlying facts of the tax sale petition required before the trial court could authorize a sheriff's sale. Because it did not hold a Section 31.2 hearing at which the City, at a minimum, placed its affidavits into evidence, the trial court had no evidentiary basis upon which to conclude, as it did in the Decree, that the City had satisfied its service requirements under Section 39.2.

---

[8] Although it requires the filing of affidavits of posting and service, the MCTLA provides no mechanism other than a Section 31.2 hearing whereby an interested party might challenge those affidavits.

[9] In a case like the instant matter, where no answer had been timely filed and no interested party presented to challenge the City's evidence regarding service, a hearing consisting merely of the City moving its tax sale petition and service affidavits into evidence for the lower court's consideration would suffice to satisfy the "narrow factual inquiry" required to determine the City's compliance with the MCTLA's service requirements and the veracity of the facts alleged in the tax sale petition. *City of Philadelphia v. Robinson*, 123 A.3d 791, 798 (Pa. Cmwlth. 2015).

13

Finally, we disagree with the City's suggestion that, because he failed to register his interest in the Property pursuant to MCTLA Section 39.1,[10] Appellant lacks standing to contest the sheriff's sale of the Property. *See* City's Brief at 29-31. While the City's argument that a failure to properly register an interest in a property can deprive a party of standing to contest whether he received proper notice of the Property's sheriff's sale may be strictly true, it does not alter the result herein at this stage of the proceedings.

MCTLA Section 39.2(b) deprives a party that fails to properly register its interest in a property pursuant to MCTLA Section 39.1 of standing to contest the adequacy of the City's MCTLA Section 39.2(a) service as follows:

> No party whose interest did not appear on a title search, title insurance policy or tax information certificate or who failed to accurately register his interest and address pursuant to section 39.1 of this act shall have standing to complain of improper notice if the city shall have complied with subsection (a) of this section. This provision shall not apply if the mortgage or interest was otherwise properly recorded in the Office of the Recorder of Deeds and the document contains a current address

---

[10] MCTLA Section 39.1(a) requires:

> Any owner of real property located within a city of the first class, any mortgagee thereof or any person having a lien or claim thereon or interest therein shall register a notice of interest with the department of the city of the first class responsible for collection of tax and municipal claims stating his name, residence and mailing address and a description of the real property in which the person has an interest. A notice of interest shall not be required for any mortgage or interest otherwise properly recorded in the Office of the Recorder of Deeds provided the document contains a current address sufficient to satisfy the notice requirements of this section. The interested party shall file an amended registration as needed.

53 P.S. § 7193.1(a).

14

sufficient to satisfy the notice requirements of this section. Notwithstanding any other requirement set forth in this act or any other law to the contrary, the notice required by subsection (a) of this section shall constitute the only notice required before a court may enter a decree ordering a tax sale.

53 P.S. § 7193.2(b).

Thus, the plain language of the MCTLA Section 39.1(b) standing requirement provides the City with a defense it may raise against individuals wishing to challenge the adequacy of the City's service compliance at a Section 31.2 hearing. It does not, however, excuse or supplant the requirement that the trial court conduct a Section 31.2 hearing to determine the City's strict compliance with the MCTLA's service requirements and to determine the veracity of the underlying factual assertions in the first place. As previously noted, a Section 31.2 hearing is a jurisdictional prerequisite to a sheriff's sale, without which the trial court lacks jurisdiction to authorize a sheriff's sale. *Manu*, 76 A.3d at 605. While the City may challenge an objecting party's standing at a Section 31.2 hearing, the hearing must nevertheless take place. We further stress again that the requirement that the trial court conduct a Section 31.2 hearing is intended not to give those challenging a tax sale petition a second bite at the apple, but instead to protect the due process interests of individuals whom the City seeks to dispossess of their property interests by petition alone. *Id.* at 606. Therefore, regardless of whether Appellant ultimately has standing to object to service at a Section 31.2 hearing, the trial court still is required to conduct the Section 31.2 hearing during which it requires the City to put forth evidence illustrating strict compliance with the MCTLA's Section 39.1(a) service requirements as well as the veracity of the City's underlying claims.

15

For these reasons, the trial court lacked jurisdiction to enter the Decree allowing for the Property to be sold at a sheriff's sale. As a result, the trial court abused its discretion in denying the Motion to Set Aside the Sheriff's Sale. Therefore, we reverse the order denying Appellant's Motion to Set Aside, vacate the trial court's decree authorizing the Property be sold at a sheriff's sale, and remand the matter for further proceedings in accordance with this opinion.[11]

_____
CHRISTINE FIZZANO CANNON, Judge

---

[11] Based on our determination above, we need not reach Appellant's remaining arguments on appeal.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Philadelphia                    :
                                        :
            v.                          :
                                        :
Estate of Thomas Labrosciano,           :
Estate of Marie Labrosciano,            :
and Rocco Labrosciano                   :
                                        :   No. 1178 C.D. 2017
Appeal of:  Rocco Labrosciano           :


O R D E R


        AND NOW, this 18th day of December, 2018, the July 21, 2017 order of the Court of Common Pleas of Philadelphia County (trial court) denying Rocco Labrosciano's Motion to Set Aside Sheriff Sale is REVERSED.  The trial court's August 28, 2015 decree authorizing a sheriff's sale of the property located at 1731 South Mole Street, Philadelphia, is VACATED, and the case is REMANDED for further proceedings consistent with the foregoing opinion.

        Jurisdiction relinquished.


_____
CHRISTINE FIZZANO CANNON, Judge