City of Philadelphia     :
          :
    v.      :
          :
Rasheen Jones,     :   No. 1457 C.D. 2018
    Appellant  :   Submitted: August 23, 2019


BEFORE:  HONORABLE PATRICIA A. McCULLOUGH, Judge
      HONORABLE ANNE E. COVEY, Judge
      HONORABLE ELLEN CEISLER, Judge

OPINION BY
JUDGE COVEY        FILED: November 20, 2019


    Rasheen Jones (Jones) appeals, pro se,[1] from the Philadelphia County Common Pleas Court's (trial court) June 14, 2018 order denying his Petition to Open, Strike, Stay or Set Aside Sheriff's Sale and Deed Arising From Tax Sale (Petition). Jones essentially presents two issues for this Court's review: (1) whether the trial court erred by concluding that the City of Philadelphia (City) properly served him with notice before selling his property located at 1225 West Hazzard Street, Philadelphia, Pennsylvania 19133 (Property) at sheriff's sale; and (2) whether the trial court erred by concluding that the notice requirements in Section 39.2 of what is commonly referred to as the Municipal Claims and Tax Liens Act (MCTLA)[2] satisfied his due process rights.[3] The City presents two additional issues: (3) whether

---

   [1] Jones was represented by counsel when this appeal commenced. However, on November 20, 2018, this Court granted his counsel's motion to withdraw as counsel and directed that Jones proceed pro se. *See* November 20, 2018 Order.

   [2] Act of May 16, 1923, P.L. 207, *as amended*, added by Section 4 of the Act of December 14, 1992, P.L. 859, 53 P.S. § 7193.2.

   [3] Jones presented five issues in his Statement of the Questions Involved: whether the trial court erred (1) by denying the Petition; (2) by denying his due process rights under the United States and Pennsylvania Constitutions; (3) by failing to require strict compliance with notice service

the trial court had jurisdiction to consider Jones's claims; and (4) whether Jones had standing to challenge notice. After review, we affirm.

## Background

The facts of this case are undisputed. Jones has owned the Property since 2012. On December 27, 2016, the City filed a Petition for Rule to Show Cause Why the Property Should Not Be Sold Free and Clear of All Liens and Encumbrances (Tax Claim) in the trial court against Jones for the Property's $2,633.65 in unpaid real estate taxes, penalties, interest, fees and costs. *See* Original Record (O.R.) Item 2. Attached to the Tax Claim was a tax information certificate (TIC) listing Jones as the Property's owner, and reflecting that Jones's deed address was P.O. Box 14132, Philadelphia, Pennsylvania 19101 (Record Address).[4] *See* Amended Reproduced Record (R.R.)[5] at C-12 – C-13. Attached to the TIC and incorporated therein by reference was the City's "MC Open Judgment Index" (Index) listing numerous claims against 10 City properties owned by a "Rasheen Jones." R.R. at C-14 – C-21.

---

mandates; (4) by failing to recognize that the City must take additional steps to notify an owner before selling his property; and (5) by allowing the Property to be taken without affording him notice and an opportunity to be heard. *See* Jones's Br. at 6. These issues are subsumed in the Court's rephrasing of the issues and will be addressed accordingly herein.

[4] What the parties referred to herein as the TIC is entitled "Title Report/Title Tracking." Reproduced Record (R.R.) at C-12. Jones's mortgage also specifies that his address is P.O. Box 14132, Philadelphia, Pennsylvania 19101. *See* R.R. at E-10.

[5] The City urges this Court to dismiss Jones's appeal as procedurally deficient because his Amended Reproduced Record does not comply with Pennsylvania Rule of Appellate Procedure (Appellate Rule) 2173 (relating to pagination) or 2174(a) (relating to tables of contents). *See* City Br. at 11. Despite that the pages therein do not consist of page numbers "followed . . . by a small a[,]" pursuant to Appellate Rule 2173, and the table of contents may not fully comply with Appellate Rule 2174(a), Jones has numbered his pages and drafted his table of contents in such a manner that this Court's "review of the issues raised has not been substantially hampered by the defects." *Sevin v. Kelshaw*, 611 A.2d 1232, 1235 (Pa. Super. 1992). Therefore, this Court declines to dismiss Jones's appeal on this basis.

For sake of clarity and consistency, this Court will reference the Amended Reproduced Record page numbers as Jones has designated them.

2

On the same date, the trial court entered a rule returnable (Rule) for a February 27, 2017 hearing and ordered the City to serve the Tax Claim upon Jones in accordance with Section 39.2 of the MCTLA. *See* O.R. Item 2 at 11.

On February 7, 2017, the City filed an affidavit evidencing that the Tax Claim and the Rule were served on January 26, 2017 by regular (first class) and certified mail, return receipt requested to Jones at: (1) the Record Address; (2) P.O. Box 14132, Philadelphia, Pennsylvania 19138;[6] and (3) the Property.[7] *See* R.R. at A-8. On February 23, 2017, the City filed an affidavit reflecting that the Tax Claim and the Rule were posted on the Property's front door on January 24, 2017. *See* R.R. at A-10. The mailings were returned to the City as undeliverable. Jones did not respond to the Tax Claim or appear at the February 27, 2017 hearing.

The trial court held the hearing on February 27, 2017, and entered an Assessment of Damages Order and Decree Ordering that the Property be Sold at Sheriff's Sale (Decree).[8] *See* R.R. at A-12 – A-15. The sheriff's sale was scheduled for May 16, 2017. On April 13, 2017, the City filed an affidavit reflecting that it sent the Decree and sheriff's sale notice by regular mail to Jones at: (1) the Record Address; (2) P.O. Box 14132, Philadelphia, Pennsylvania 19138; and (3) the Property.[9] *See* R.R. at A-17 – A-19.

---

[6] This address (which is the same post office box number as the Record Address, but with a different zip code) was listed on the first page of the TIC as Jones's address. *See* R.R. at C-12.

[7] The City also served the Pennsylvania Department of Revenue and the United States Attorney. *See* R.R. at A-8.

[8] The Decree was docketed on March 2, 2017. As of February 1, 2017, the assessed damages were $2,809.43. *See* O.R. Item 5.

[9] The City also sent the Decree and sheriff's sale notice by regular mail to the following parties listed in the Index as claimants against 10 City properties owned by a "Rasheen Jones": United States Attorney, Commonwealth of Pennsylvania Department of Revenue, City Department of Licenses and Inspections, City Office of Judicial Records, City Clerk of Quarter Sessions, City Traffic Court and Portfolio Recovery Associates, LLC. *See* R.R. at A-18 – A-19.

The City represents in its brief to this Court, and Jones does not dispute, that the City also posted the Property on March 31, 2017, and advertised the sheriff's sale by publication in the *Legal Intelligencer* and the *Philadelphia Tribune*. *See* City Br. at 9, 13, Ex. B.

On June 2, 2017, because there were no bids, the City continued the May 16, 2017 sheriff's sale until June 20, 2017. *See* R.R. at A-21. On June 20, 2017, Credit Medics purchased the Property at sheriff's sale for $8,500.00. *See* O.R. Item 9 at 13. Credit Medics subsequently assigned the Property to Ione Drummond Williams (Williams), who completed the sale, and the sheriff acknowledged the deed on July 12, 2017. *See* R.R. at A-1 – A-6.

Jones filed the Petition on January 31, 2018, claiming therein that he never resided at the Property, that he did not receive notice at the Property or by mail, that the Record Address "was terminated at the time of the attempted service[,]" and that his correct address is 6443 Malvern Avenue, Philadelphia, Pennsylvania 19151 (Malvern Avenue Address). R.R. at B-3. Jones asserted that, since his Malvern Avenue Address was on record with the City relative to his business license and other properties for which he receives tax notices, if the City had taken reasonable additional steps to locate him, it would have discovered that address. The City responded to the Petition the same day, declaring that it properly served the Tax Claim on Jones pursuant to the MCTLA, that Jones failed to update his address with the City's Office of Property Assessment, and that the Petition was late-filed. On February 23, 2018, the trial court issued a rule returnable for an April 4, 2018 hearing. *See* O.R. Items 10, 14. At Jones's request, the hearing was rescheduled for April 19, 2018. *See* O.R. Items 11-13.

At the April 19, 2018 hearing, the City argued that the MCTLA requires only that it send notice to the address on the TIC, which the City did in this case. The City also stated that the trial court lacked jurisdiction because Jones filed the Petition more than three months late. Jones's counsel countered that, since the TIC upon which the City relied referenced "JUDGMENTS: (8 pages) See Attached[,]" the City was obligated to send Jones notice at all of the addresses listed on the Index, which

4

included the Malvern Avenue Address. R.R. at C-12. On April 19, 2018, the trial court continued the hearing to June 14, 2018. *See* O.R. Item 15.

On June 14, 2018, the parties reiterated their arguments, and the City added that since Jones failed to ensure that his Malvern Avenue Address was accurately registered pursuant to Section 39.1 of the MCTLA,[10] he lacked standing under the MCTLA to object. Jones presented a copy of the Index, his Commercial Activity License reflecting the Malvern Avenue Address, *see* R.R. at C-23, and the valuation history for the Malvern Avenue Address. *See* R.R. at C-25. That same day, the trial court denied the Petition.[11] *See* R.R. at F-1. On July 13, 2018, Jones timely appealed from the trial court's order to this Court.[12] The trial court filed its opinion on September 24, 2018, stating therein that it denied the Petition because it was untimely filed, Jones lacked standing to challenge notice, the City properly served Jones, and the MCTLA does not violate Jones's constitutional rights. *See* R.R. at F-2 – F-17.

## Discussion

### 1. Timeliness

Section 39.3 of the MCTLA[13] directs:

> **All parties wishing to contest the validity of any sale** conducted pursuant to [S]ection 31.2 of [the MCTLA

---

[10] Added by Section 4 of the Act of December 14, 1992, P.L. 850, 53 P.S. § 7193.1 (requiring property owners to register notices of interest with the City's taxing authorities if the interest is not already properly recorded with a current address in the Office of Recorder of Deeds).

[11] The order was signed on June 14, 2018, and entered onto the docket on June 15, 2018.

[12] Jones appealed to the Pennsylvania Superior Court. On September 25, 2018, the matter was transferred to this Court.

"Our scope of review in tax sale cases is limited to determining whether the trial court abused its discretion, rendered a decision which lacked supporting evidence, or clearly erred as a matter of law." *City of Phila. v. F.A. Realty Inv'rs Corp.*, 146 A.3d 287, 293 n.9 (Pa. Cmwlth. 2016).

[13] Added by Section 4 of the Act of December 14, 1992, P.L. 859, 53 P.S. § 7193.3.

(relating to City tax claims)[14]], **including the sufficiency of any notice**, and any party claiming to have an interest in the premises which was not discharged by the sale **must file a petition seeking to overturn the sale** or to establish the interest **within three months of the acknowledgment of the deed to the premises by the sheriff**.

53 P.S. § 7193.3 (emphasis added).

In the instant matter, the sheriff acknowledged the deed on July 12, 2017. Pursuant to Section 39.3 of the MCTLA, Jones had until October 12, 2017 to timely file the Petition. Jones filed his Petition on January 31, 2018, more than six months after the sheriff's acknowledgement. Because the Petition was not timely filed, the trial court lacked jurisdiction to act.

## 2. Standing[15]

> Initially, standing is expressly defined and limited by [S]ection[] 39.2(a) and (b) of the MCTLA, *see Petty v. Hosp*[.] *Serv*[.] *Ass*[']*n of N*[e.] *P*[a.], . . . 23 A.3d 1004, 1008 ([Pa.] 2011) ('[S]tanding . . . is governed by the statute itself'), which set[s] forth the only notice requirements 'before a court may enter a decree ordering a tax sale.' 53 P.S. § 7193.2(b).

*U.S. Nat'l Bank Ass'n v. United Hands Cmty. Land Tr.*, 129 A.3d 627, 637 (Pa. Cmwlth. 2015). Section 39.2(b) of the MCTLA provides:

> **No party whose interest did not appear on a** title search, title insurance policy or [**TIC**] **or who failed to accurately register his** interest and **address** . . . **shall have standing to complain of improper notice if the** [C]ity **shall have complied with subsection (a) of this section.** This provision shall not apply if the mortgage or interest was otherwise properly recorded in the Office of the Recorder of

---

[14] Added by Section 1 of the Act of March 15, 1956, P.L. (1955) 1274, 53 P.S. § 7283. Section 31.2 of the MCTLA outlines the specific steps the City and the trial court must follow before authorizing the sheriff's sale of a property subject to a City tax claim.

[15] In analyzing the City's standing issue, this Court necessarily addresses Jones's issue as to the merits.

6

Deeds and the document contains a current address sufficient to satisfy the notice requirements of this section. Notwithstanding any other requirement set forth in this [MCTLA] or any other law to the contrary, the **notice required by subsection (a) of this section shall constitute the only notice required before a court may enter a decree ordering a tax sale**.

53 P.S. § 7193.2(b) (emphasis added). Therefore, in order to assess whether Jones had standing, this Court must first determine that the City strictly complied with Section 39.2(a) of the MCTLA.

Section 39.2(a) of the MCTLA states, in pertinent part:

**In cities of the first class,**[16] **notice** of a rule to show cause why a property should not be sold free and clear of all encumbrances . . . **shall be served** by the claimant upon owners, mortgagees, holders of ground rents, liens and charges or estates of whatsoever kind **as follows**:

(1) **By posting** a true and correct copy of the petition and rule **on the most public part of the property**;

(2) By **mailing by first class mail to the address registered by any interested party** pursuant to [S]ection 39.1 of [the MCTLA] a true and correct copy of the petition and rule; **and**

(3) **By reviewing a** title search, title insurance policy or [**TIC**] **that identifies interested parties of record who have not registered their addresses** . . . , the [C]ity shall mail by first class mail and either by certified mail, return receipt requested, or by registered mail **to such addresses as appear on the respective records relating to the premises** a true and correct copy of the petition and rule.

Service of notice pursuant to this section shall be deemed accomplished on the date of mailing. **The [C]ity shall file an affidavit of service with the court prior to seeking a decree ordering the sale of the premises.**

---

[16] "Philadelphia is the only city of the first class in the Commonwealth." *Blount v. Phila. Parking Auth.*, 965 A.2d 226, 228 n.4 (Pa. 2009).

53 P.S. § 7193.2(a) (emphasis added).

> This Court has ruled:
>
> > 'The collection of [real estate tax] claims may not be implemented without due process of law guaranteed by the United States and Pennsylvania Constitutions.' [*City of Phila. v. Manu*, 76 A.3d 601, 606 (Pa. Cmwlth. 2013)]. 'Strict compliance with the service requirement protects the procedural due process rights of all interested parties to notice and an opportunity to be heard and also guards against deprivation of property without substantive due process of law.' *Id.*

*City of Phila. v. Labrosciano*, 202 A.3d 145, 151-52 (Pa. Cmwlth. 2018). "[T]he purpose of a sheriff's sale under the MCTLA 'is not to strip the owner of his or her property[,] but to collect municipal claims.'" *Id.* at 151 (quoting *Manu*, 76 A.3d at 606). Accordingly, "it is the City's burden . . . to prove strict compliance with the requirements of the MCTLA." *U.S. Nat'l Bank Ass'n*, 129 A.3d at 633.

> Here, the trial court found:
>
> > On January 24, 2017, the City posted a copy of the [Tax Claim] and Rule on the Property's front door. On January 26, 2017, the City mailed a copy of the [Tax Claim] and Rule to the registered addresses for all interested, registered parties and to the addresses of all interested (but unregistered) parties identified by title search, title insurance policy or [TIC] by regular and certified mail. More specific and germane to this appeal, the City mailed a copy of the [Tax Claim] and Rule to [Jones] at three addresses: (1) [the Record Address], (2) P.O. Box 14132, Philadelphia, Pennsylvania 19138, and (3) [the Property]. The mailings [were] returned to the City as undeliverable.
> >
> > On February 27, 2017, the Office of Judicial Records [] held the Rule hearing in City Hall, Courtroom 478. [Jones] failed to appear or file an answer. On March 2, 2017, after an independent inquiry into the record,[17] the trial court

---

[17] A trial court that fails to conduct a hearing and engage in an independent inquiry into the City's compliance with Section 39.2 of the MCTLA, as mandated by Section 31.2(a) of the

8

entered [the] Decree and ordered the Property to proceed to [s]heriff's sale.

Trial Ct. Op. at 2.

In concluding that the City served Jones with the Tax Claim and Rule in accordance with Section 39.2(a) of the MCTLA, the trial court reasoned:

> Contrary to [Jones's] argument, the MCTLA does not require the City to mail a copy of the [Tax Claim] and Rule to [Jones's] [Malvern Avenue] Address. First, after requiring that the City review a title search, title insurance policy, or [TIC], Section [39.2(a)(3) of the MCTLA] requires the City to mail a copy of the [Tax Claim] and Rule only to 'such addresses as appear on the respective records relating to the premises.' [53 P.S.] § 7193.2(a). . . .
>
> The trial court recognized that there are other addresses listed in the [Index]. However, the purpose of the [Index] is to provide the City with the identity of creditors who have obtained judgments against [Jones] prior to the date of the [D]ecree; the [Index] is not a replacement for the addresses listed on the [TIC].
>
> Second, the City was not required to search through the [Index], [Jones's] business license [or] [Jones's] complete record at the Office of Property Assessment in order to serve him properly under the MCTLA. As held in [*Jones v.*] *Flowers*[, 547 U.S. 220 (2006)], the City is not 'required

---

MCTLA (requiring the trial court to conduct a hearing), lacks jurisdiction to authorize sale of a property at sheriff's sale. *Labrosciano*, 202 A.3d at 154. Here, no hearing transcript is included with the trial court's original record. However, the trial court's opinion reflects: "On February 27, 2017, the Office of Judicial Records [] held the Rule hearing in City Hall, Courtroom 478. [Jones] failed to appear or file an answer." Trial Ct. Op. at 2. This Court has held:

> [W]here no answer had been timely filed and no interested party presented to challenge the City's evidence regarding service, a hearing consisting merely of the City moving its tax sale petition and service affidavits into evidence for the lower court's consideration would suffice to satisfy the 'narrow factual inquiry' required to determine the City's compliance with the MCTLA's service requirements and the veracity of the facts alleged in the tax sale petition.

*Labrosciano*, 202 A.3d at 154 n.9.

9

to search the local phone book and other government records' in order to locate a defendant. 'Such an open-ended search imposes burdens on the [s]tate significantly greater than' the additional, reasonable steps outlined in *Flowers* and taken by the City in this case. . . . The MCTLA simply requires the City [to] make service according to the statute and provide proof of that service.

Trial Ct. Op. at 8-9.

In *Flowers*, the United States Supreme Court ruled that the property owner who failed to comply with a statutory obligation to keep his address updated should have been more diligent, "[b]ut before forcing a citizen to satisfy his debt by forfeiting his property, due process requires the government to provide adequate notice of the impending taking."[18] *Id.* at 234; *see also Tracy v. Chester Cty., Tax Claim Bureau*, 489 A.2d 1334 (Pa. 1985). The *Flowers* Court concluded that "notice [is] constitutionally sufficient if it was reasonably calculated to reach the intended recipient when sent." *Id.* at 226.

In *Flowers*, the taxing authority sent notice of a property owner's real estate tax delinquency and his right to redeem the property by certified letter to the property owner's record address, in accordance with Arkansas law. After the certified letter was returned by the post office marked *unclaimed*, the taxing authority proceeded to sell the property. The *Flowers* Court declared that, where tax sale notices were mailed to the property owner's record address, but were returned as unclaimed, the taxing body was required to take additional reasonable steps to provide notice to the property owner before selling his property. The *Flowers* Court held that the government need not go so far as to search for an alternate address in the local telephone book or "other government records[,] such as income tax rolls[,]" *Id.* at 236, but acknowledged that reasonable steps, including sending notice by regular

---

[18] Notably, "[d]ue process does not require that a property owner receive actual notice before the government may take his property." *Flowers*, 547 U.S. at 226.

10

mail and "post[ing] notice on the front door," *id.* at 235, "would increase the likelihood that the owner would be notified that he was about to lose his property, given the failure of a letter deliverable only to the owner in person." *Id.*

In *Tracy*, after the property owner's address changed, the post office forwarded mail to the new address for one year, during which the company paid its taxes by checks bearing the new address. Notwithstanding, the taxing authority thereafter sent a real estate tax delinquency notice to the property owner at its original record address, which notice was returned as undeliverable after the forwarding order had expired. The taxing authority made no other efforts to notify the property owner, and the property was sold at tax sale. The Pennsylvania Supreme Court set the sale aside because the taxing authority's efforts to notify the property owner were not reasonable under the circumstances, ruling:

> [W]here a taxing authority intends to conduct a sale of real property because of nonpayment of taxes, it must notify the record owner of property by personal service or certified mail, *and where the mailed notice has not been delivered because of an inaccurate address,* the authority must make a *reasonable effort* to ascertain the identity and whereabouts of the owner(s).

*Id.* at 1338-39.

Notably, neither *Flowers* nor *Tracy* involved the MCTLA. The General Assembly expressly incorporated into the MCTLA specific, reasonable steps (including regular mail and posting) the City must take to notify property owners when it seeks to submit properties for sheriff's sales, and declared therein that "**notice required by [Section 39.2(a) of the MCTLA] shall constitute *the only notice required* before a court may enter a decree ordering a tax sale**." 53 P.S. § 7193.2(b) (bold and italic emphasis added).

11

Here, the City was required to post the Tax Claim and Rule on the most public part of the Property and notify the trial court, *see* 53 P.S. § 7193.2(a)(1), which it did.

The City was also mandated to send the Tax Claim and Rule by first class mail to addresses registered by interested parties pursuant to Section 39.1 of the MCTLA and notify the trial court, *see* 53 P.S. § 7193.2(a)(2), which it did. Section 39.1 of the MCTLA states, in relevant part:

> (a) **Any owner of real property located within [the C]ity . . . shall register a notice of interest** with the department of the [C]ity . . . responsible for collection of tax and municipal claims stating **his name, residence and mailing address and a description of the real property in which the person has an interest**. A notice of interest **shall not be required for any mortgage or interest otherwise properly recorded in the Office of the Recorder of Deeds** *provided* the document contains a *current address sufficient to satisfy the notice requirements* **of this section. The interested party shall file an amended registration as needed.**
>
> (b) After the completion and filing of a notice of interest, [the C]ity . . . shall serve all petitions, rules and other notices required by this [MCTLA] on those interested parties at the registered address.

53 P.S. § 7193.1 (bold and italic emphasis added).

Jones admits that his Record Address "was terminated at the time of the attempted service[.]" R.R. at B-3. Despite Jones's claim that the Malvern Avenue Address is his proper mailing address, it is not the one listed on the Property's deed or mortgage documents, and he clearly "failed to accurately register his [Malvern Avenue A]ddress[,]" with the City pursuant to Section 39.1 of the MCTLA.

Finally, pursuant to Section 39.2(a)(3) of the MCTLA, the City was to "identif[y, from the TIC,] interested parties of record who have not registered their addresses," and send the Tax Claim and Rule to them by first class and certified mail

12

and notify the trial court, *see* 53 P.S. § 7193.2(a)(3), which it did. As the City represented, and the trial court found as fact, the Index's purpose is to identify creditors with judgments against Jones, and is not intended as a means by which the City could necessarily find Jones.

The Index listed judgments against individuals named Rasheen Jones with the following City addresses:

2443 10th Street

2140 Malvern Avenue

6443 Malvern Avenue

2140 Melvin Street

5138 New Hall Street

435 North 60th Street

1451 North Hirst Street

7449 Ruskin Road

802 South Vodges Street

2532 West Oakdale Street

*See* R.R. at C-14 – C-21.

While it happens that the Malvern Avenue Address appeared on the Index, there was nothing contained therein to put the City on notice that Jones would receive the Tax Claim and Rule at any of those properties, let alone the Malvern Avenue Address.[19] Moreover, to the extent Jones could be considered an interested

---

[19] In *City of Philadelphia v. Morris Park Congregation of Jehovah's Witnesses* (Pa. Cmwlth. No. 264 C.D. 2015, filed March 7, 2016), the Court was faced with circumstances similar to those currently before this Court, in that the property owner failed to update its address with the City and claimed that the City should have searched its department records for its correct address. The Court concluded:

> The MCTLA does not require the City to search through the records of each of its many [d]epartments prior to initiating a [s]heriff's sale to collect municipal taxes. Moreover, the record does not support [the a]ppellant's argument that the City had notice of the correct contact information for [the a]ppellant and failed to act upon it. . . . [T]he

13

but unregistered party under Section 39.2(a)(3) of the MCTLA, that provision specifically directs the City to send the Tax Claim and Rule to "**such addresses as appear on the respective records** *relating to the premises*[.]"  53 P.S. § 7193.2(a)(3) (bold and italic emphasis added).  The Rasheen Jones addresses listed on the Index are not expressly "relat[ed] to the [Property]."[20]  53 P.S. § 7193.2(a)(3).

Under the circumstances, the City's regular and certified mailings of the Tax Claim and Rule to the Record Address, P.O. Box 14132, Philadelphia, Pennsylvania 19138, and the Property, along with the posting at the Property, satisfied Section 39.2(a) of the MCTLA.  Where, as here, Jones failed to properly record or update his address or otherwise register his interest in the Property, and the City complied with Section 39.2(a) of the MCTLA, Jones lacks standing to complain of improper notice.  *See* 53 P.S. § 7193.2(b).

### Conclusion

Because the trial court lacked jurisdiction to consider Jones's claims, and Jones lacked standing to challenge notice, the trial court's order is affirmed.

_____
ANNE E. COVEY, Judge

---

contact addresses, individuals, and named organizations differ.  Had the City searched the records of its many [d]epartments and discovered these records, there was no basis to conclude which address was correct or that one of the many provided was more likely to reach [the a]ppellant than the address on [the a]ppellant's deed.

*Morris Park Congregation*, slip op. at 9-10 (footnote omitted).
This Court acknowledges that its unreported memorandum opinions may only be cited "for [their] persuasive value, but not as binding precedent."  Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).  *Morris Park Congregation* is cited herein for its persuasive value.
[20] Nevertheless, the City served Jones's judgment creditors pursuant to Section 39.2(a)(3) of the MCTLA.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Philadelphia           :
                                 :
        v.               :
                                 :
Rasheen Jones,             :         No. 1457 C.D. 2018
          Appellant     :

O R D E R

AND NOW, this 20ᵗʰ day of November, 2019, the Philadelphia County Common Pleas Court's June 14, 2018 order is affirmed.

_____
ANNE E. COVEY, Judge