J-S38009-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| URIEL JUAREZ-HIDALGO | : | |
| | : | |
| Appellant | : | No. 368 EDA 2025 |

Appeal from the Judgment of Sentence Entered January 3, 2025
In the Court of Common Pleas of Chester County Criminal Division at
No(s): CP-15-CR-0001129-2022

BEFORE: McLAUGHLIN, J., KING, J., and BENDER, P.J.E.

MEMORANDUM BY McLAUGHLIN, J.: **FILED FEBRUARY 13, 2026**

Uriel Juarez-Hidalgo appeals from the judgment of sentence entered following his convictions for two counts of aggravated indecent assault of a child, and one count each of false imprisonment of a minor, aggravated indecent assault, endangering welfare of children, terroristic threats, and simple assault.[1] He challenges a question asked during *voir dire*, the sufficiency of the evidence, and the admission of evidence. We affirm.

In February 2022, Appellant's sister, A.J.H., reported to officers that she found Appellant in a bedroom with A.J.H.'s 13-year-old daughter, E.R.J. A.J.H. said she forced the bedroom door open and observed Appellant on top of E.R.J., holding her down, and touching her chest area. Trial Ct. Op, filed Mar.

_____

[1] 18 Pa.C.S.A. §§ 3125(b), 2903(b), 3125(a)(7), 4304(a)(1), 2706(a)(1), and 2701(a)(1), respectively.

13, 2025, at 2. In their forensic interviews, E.R.J. and her brother S.R.J. reported that Appellant had abused them for approximately two years. ***Id.***

In May 2024, the Commonwealth filed a Motion to Allow Testimony of Out of Court Statements Made by a Child Victim, Pursuant to 42 Pa.C.S.A. § 55985.1. The court conducted a Tender Years hearing, where it heard from A.J.H and from child forensic interviewer Elisa Mendoza. It also reviewed video recordings of the children's interviews.[2] The court granted the motion in open court. N.T., June 6, 2024, at 32.

At Appellant's jury trial, A.J.H. testified that prior to February 2022, she and her children, E.R.J. and S.R.J., lived with her mother and her three brothers, including Appellant. N.T., June 10, 2024, at 37. She stated that they stayed in a bedroom with A.J.H.'s mother. ***Id.*** at 40-41. She testified that Appellant would be home with E.R.J. and S.R.J. while A.J.H. was at work. ***Id.*** at 39. A.J.H. testified that on February 5, 2022, she was supposed to go to work, but her grandson told her something that led her to check on E.R.J. ***Id.*** at 41, 44. She testified that E.R.J. was in the room that they slept in, and the door, which did not lock from the inside, was blocked with crutches. ***Id.*** at 45, 53-54. She stated E.R.J. was crying and A.J.H. used all of her strength to push the door open. ***Id.*** at 46. She testified Appellant was on top of E.R.J., was touching her breasts, and "was touching her all over everything." ***Id.*** A.J.H. testified that in the hallway, E.R.J. told her that Appellant wanted E.R.J. to be

_____

[2] The video recordings are not in the certified record. The unofficial transcript of the recordings are in the record, as an exhibit to the hearing.

his wife and that "he would touch her all over when they were alone," including her "lower private part." *Id.* at 48-49.

S.R.J. testified that at the time of trial he was 13 years old and in the eighth grade. *Id.* at 67. He testified that he had a favorite teacher, but that he did not remember what she taught. *Id.* at 67-68. S.R.J. also did not remember who he was living with in 2022. *Id.* at 70. He testified that in 2022, when he got off the bus, nobody was home, and Appellant was the first person to arrive home. *Id.* at 71. S.R.J. stated E.R.J. came home on a different bus. *Id.* at 71-72. He "[did not] remember" what Appellant did to E.R.J. *Id.* S.R.J. testified Appellant hit him in the back with a belt or phone cord, and it left marks. *Id.* at 72. S.R.J. stated he did not remember how often Appellant hit him, but it was more than once. *Id.* at 73. He said he did not tell his mom because he was scared of Appellant. *Id.* S.R.J. testified he did not remember if Appellant was ever in his grandmother's room. *Id.* at 74. He also stated that Appellant would let S.R.J. watch videos on his phone. *Id.* ta 74-75. He said he saw Appellant be affectionate with E.R.J. by kissing her cheek. *Id.* at 75.

The child forensic interviewer, Mendoza, testified that she interviewed S.R.J. and E.R.J. on February 9, 2022. N.T., June 11, 2024, at 5, 8-9. The video recording of the interviews was played for the jury.

E.R.J. testified that when she lived at her grandmother's house, Appellant would be at the house when she arrived home from school. *Id.* at 21. She said Appellant would give his phone to S.R.J. and S.R.J. would watch videos in their grandmother's room. *Id.* at 23. E.R.J. testified that Appellant

would then close and lock the door to his bedroom, pull on E.R.J.'s hair, and pull her into bed. ***Id.*** at 24. She stated that Appellant would say he wanted to marry E.R.J. ***Id.*** E.R.J. testified that Appellant touched her in her chest and "down below," he touched her underneath her clothes, and kissed her on the mouth. ***Id.*** at 25-26. E.R.J. testified Appellant touched inside her "down low part" more than once, and her clothes were off when he did. ***Id.*** at 26. E.R.J. stated that Appellant held her hands on top of her "hard so that [she] couldn't get them away." ***Id.*** at 27. She stated she could not get up. ***Id.*** at 27-28. She also testified that Appellant told her that if she told her mom, he would hit her brother. ***Id.*** at 28. She stated that she had seen Appellant hit her brother with a belt. ***Id.*** E.R.J. stated she was 11 when Appellant first abused her and that it happened "many times." ***Id.*** at 29-30.

E.R.J. initially testified that her birthday was a date in July, but on cross-examination acknowledged it was that same date, but in June. ***Id.*** at 31. On cross-examination, E.R.J. testified that in a prior interview she said Appellant had used five fingers at the same time to touch her. ***Id.*** at 34-35. E.R.J. also testified Appellant had used his penis one time, but that in a prior interview, she said Appellant had used his penis more than once. ***Id.*** at 35-36. On re-direct examination, E.R.J. testified that Appellant had put his penis inside her and that she had not told the authorities until the month before trial because she was scared. ***Id.*** at 38.

The jury convicted Appellant, as to E.R.J., of two counts of aggravated indecent assault of a child, and one count each of false imprisonment of a

minor, aggravated indecent assault, endangering welfare of children, and terroristic threats. As to as to S.R.J., it found him guilty of one count of simple assault.[3] The trial court sentenced Appellant to an aggregate sentence of 20 to 40 years' incarceration and six years' probation. The court found him to be a sexually violent predator. Appellant filed a timely notice of appeal.[4]

Appellant raises the following issues:

> I. Did the trial court err in granting the Commonwealth's request to ask prospective jurors during *voir dire* if they could follow the law and vote to convict Appellant based solely on the uncorroborated testimony of a witness where this question improperly permitted the Commonwealth to determine the prospective jurors' attitude and opinions on specific legal principles?

> II. Were Appellant's convictions for indecent assault, false imprisonment, indecent assault, endangering the welfare of a child, terroristic threats and simple assault supported by legally sufficient evidence where the evidence presented at trial was so unreliable and contradictory that it was incapable of supporting a guilty verdict, and thus insufficient as a matter of law?

_____

[3] When he was arrested, Appellant was charged with 281 counts related to child sexual abuse. At trial, the Commonwealth proceeded only on the above-referenced counts.

[4] The docket reflects that Appellant's Notice of Appeal was filed on February 4, 2025, a day after the 30 days allotted to file an appeal. Pa.R.A.P. 903(a). However, Appellant forwarded a digital filing to the Clerk of Courts on January 31, 2025, as noted by a stamp on the document. The Clerk of Court did not docket the document until February 4 because it did not receive payment until that date, as it was sent with the paper filing. We agree with the trial court that Appellant filed a timely appeal on January 31, 2025. **See First Union Nat'l Bank v. F.A. Realty Investors Corp.**, 812 A.2d 719, 722-23 (Pa.Super. 2002) (stating that an appeal is not rendered automatically invalid by an appellant's initial failure to tender the required fees, and an appeal filed within the allowed time without the requisite fee will still be considered valid).

III. Did the trial court err in permitting the Commonwealth to introduce the prior videorecorded statements of the two minor complainants pursuant to 42 Pa.C.S. § 5985.1 where the Commonwealth failed to establish that the time, content, and circumstances, of the children's statements were sufficiently reliable to allow their admission?

Appellant's Br. at 4.

Appellant points out that during *voir dire*, the trial court asked, over his objection, whether the prospective jurors could follow the law that provides that the uncorroborated testimony of a victim, if believed beyond a reasonable doubt, is sufficient to support a conviction. He noted that the Pennsylvania Supreme Court, in **Commonwealth v. Walker**, 316 A.3d 622 (Pa. 2024), recently granted a petition for allowance of appeal to address this issue.

After the parties filed their briefs, the Pennsylvania Supreme Court issued its decision in **Walker**. The Court found the trial court did not err "in permitting the Commonwealth to ask potential jurors during *voir dire* whether they would be able to follow the legal principle that the testimony of an alleged victim alone, if believed, is sufficient proof upon which to find a defendant guilty of sexual assault beyond a reasonable doubt." **Commonwealth v. Walker**, 341 A.3d 1271, 1273-24 (Pa. 2025). Based on **Walker**, we conclude the trial court did not err in permitting the challenged *voir dire* question.

In his second issue, Appellant challenges the sufficiency of the evidence. He claims that other than A.J.H.'s testimony that she saw Appellant touch E.R.J.'s breast on one occasion, "the only evidence implicating him in repeated acts of physical abuse and sexual molestation was the testimony of the two complainants, which was so inherently unreliable and contradictory that it was

insufficient to sustain [A]ppellant's convictions as a matter of law." Appellant's Br. at 13-14. He relies on **Commonwealth v. Karkaria**, 625 A.2d 1167 (Pa. 1993). He contends that there, "our Supreme Court explained that there is an exception to the general rule that the jury is the sole arbiter of the facts where testimony is so inherently unreliable that a verdict based upon it could amount to no more than speculation." Appellant's Br. at 15. He claims that E.R.J.'s testimony revealed she could not "answer basic questions truthfully" and had provided "inconsistent, incredible, [and] contradictory accounts of her alleged abuse." *Id.* at 16. He argues she did not know her own birth date.

Appellant also claims that her "accounts of the alleged molestations were confusing and so inherently contradictory that it was not possible for the fact-finder to reasonably determine whether the charged crimes had taken place." *Id.* at 18-19. To support his claim, he states as examples that "E.R.J. made the dubious claim that [A]ppellant penetrated her digitally using all five of his fingers at the same time" and "acknowledged at trial that she had previously testified that [A]ppellant had never engaged in vaginal intercourse with her but testified at trial that he had raped her once." *Id.* at 19. He adds that during a prior interview she had said Appellant "had raped her more than once[.]" *Id.* Appellant further contends that S.R.J.'s testimony was "no less non-sensical" than E.R.J.'s testimony," as he claimed he could not remember anything his favorite teacher had taught him or the names of the people he lived with in 2022, claimed E.R.J. did not go into a room with Appellant, and said a door, which A.J.H. said did not lock, did lock. *Id.* at 19-20.

The trial court found that Appellant waived his sufficiency claim because he failed to identify the elements that the Commonwealth had allegedly failed to prove. Trial Ct. Op. at 8. However, both in his Rule 1925(b) statement and on appeal, Appellant bases his insufficiency claim on the allegation that the "testimony is so inherently unreliable," that any verdict would be pure speculation. This was sufficiently specific. We therefore will address the claim.

When reviewing a sufficiency challenge, we "evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence." *Commonwealth v. Sebolka*, 205 A.3d 329, 336-37 (Pa.Super. 2019) (citation omitted). Evidence is sufficient where the Commonwealth has proven each element of the crime beyond a reasonable doubt. *Id.* at 337. The Commonwealth may meet its burden "by means of wholly circumstantial evidence." *Id.* (citation omitted). Additionally, the fact finder "is free to believe all, part, or none of the evidence." *Id.* (citation omitted).

Generally, challenges to the verdict based on inconsistent testimony implicate the weight, not the sufficiency, of the evidence. *Commonwealth v. Smith*, 181 A.3d 1168, 1186 (Pa.Super. 2018). However, our Supreme Court has recognized "an exception to the general rule that the jury is the sole arbiter of the facts where the testimony is so inherently unreliable that a verdict based upon it could amount to no more than surmise or conjecture." *Karkaria*, 625 A.2d at 1170 (citation omitted).

In **Karkaria**, the defendant was charged with rape and other offenses based on allegations that he sexually assaulted his stepsister between April 9, 1984, and September 19, 1984, while he was babysitting her. 625 A.2d at 1167, 1171. The defendant was 16 years old, and the complainant was 8. At trial, the complainant testified that the assaults "occurred on a regular weekly basis for over three years and occurred in exactly the same manner on each occasion." **Id.** at 1168. She said the incidents took place while her parents were out and defendant, who was her stepbrother, was caring for her. She said that although her brother was allegedly present, "he was never aware of what was transpiring." **Id.**

However, the complainant was unable to provide details concerning any other instance of assault, recall having been penetrated, or specify when or how the assaults may have occurred. **Id.** at 1171. The complainant also testified that she never experienced pain during the sexual assaults and never objected to being in the defendant's care. **Id.** at 1168. On appeal, our Supreme Court explained:

> [F]or the jury in this case to have concluded that [the complainant] was forcibly raped by [the defendant], the jury would have had to conclude that [the complainant] had been forced to submit to sexual intercourse at least once between April 9, 1984 and September 19, 1984. Since there was no direct evidence of sexual intercourse between those dates, the jury in order to convict, would have had to conclude, beyond a reasonable doubt, that the [complainant] had been forced to submit to sexual intercourse over 300 times, without ever feeling pain, without any physical evidence to support the contention that she was so victimized, and without any specific recollection

by [the complainant] as to a date certain upon which even one of the several hundred assaults occurred.

*Id.* at 1170-71. The Court further noted that the complainant "insisted that the assaults only occurred when [the defendant] was babysitting and yet she also admitted that during the time period charged in the indictment (April through September 1984), [the defendant] no longer acted as the babysitter." *Id.* at 1171. It noted that the complainant "corroborate[d] [the defendant's] testimony that not only was he no longer the babysitter in 1984, but that he was rarely even in the family home during that time period." *Id.* The Court further noted that the complainant "offered one scenario, and one scenario only, for each of the 300 or more alleged incidents of sexual assault." *Id.* The Court also pointed out that the initial complaints to law enforcement "coincide[d] precisely with the pending reconciliation of [the complainant's] mother and stepfather" and the complainant had "repeated[ly] express[ed] hatred of her stepfather." *Id.* The Court thus found the evidence insufficient.

Here, the testimony was not so unreliable as to result in a speculative verdict. Rather, E.R.J. explained what happened, and A.J.H.'s testimony corroborated E.R.J.'s testimony. Any inconsistencies in E.R.J.'s testimony would go to the weight, not the sufficiency of the evidence. Further, S.R.J. was not able to recall many details, but Appellant has not explained how his inability to remember what his favorite teacher taught him or the names of people he lived with two years prior to trial created inconsistencies in his testimony such that any verdict would be based on pure speculation. This claim fails.

- 10 -

In his final claim, Appellant argues the court erred in permitting the Commonwealth to introduce the video-recorded statements of E.R.J. and S.R.J pursuant to 42 Pa.C.S.A. § 5985.1, the Tender Years Act. He claims the Commonwealth failed to establish that the time, content, and circumstances of the children's statements were sufficiently reliable to support the admission. He claims E.R.J.'s disclosure to her mother was not spontaneous and unprompted because it was made after A.J.H. repeatedly questioned E.R.J. for "20 to 30 minutes." Appellant's Br. at 24. He claims E.R.J. repeated the statements she made to A.J.H. four days later at the forensic interview. He asserts that the statements were not sufficiently reliable to justify their admission under the Tender Years Act. Appellant argues that "the trial court failed to analyze the circumstances under which E.R.J. and her brother disclosed the abuse and instead accepted at face value the Commonwealth's claim that the time, content and circumstances of the children's statements provided sufficient indicia of their reliability to justify their admission pursuant to the Tender Years Act." *Id.* at 27.

"Hearsay is not admissible except as provided by these rules, by other rules prescribed by the Pennsylvania Supreme Court, or by statute." Pa.R.E. 802. One such statute allowing the admission of hearsay is the Tender Years Act. It provides for the admissibility of "[a]n out-of-court statement made by a child victim or witness, who at the time the statement was made was 16 years of age or younger, describing[,]" among other things, offenses set forth

in the Crimes Code under "Chapter 27 (relating to assault)" and "Chapter 31 (relating to sexual offenses)." 42 Pa.C.S. § 5985.1(a)(1), (2).

For this exception to apply, the court must find "that the evidence is relevant and that the time, content and circumstances of the statement provide sufficient indicia of reliability" and that the child either "testifies at the proceeding" or "is unavailable as a witness." 42 Pa.C.S. § 5985.1(a)(1). This Court has held that for the purposes of this exception, the "indicia of reliability" includes, among other things, "the spontaneity of the statements, consistency in repetition, the mental state of the declarant, use of terms unexpected in children of that age, and the lack of a motive to fabricate." ***Commonwealth v. Strafford***, 194 A.3d 168, 173 (Pa.Super. 2018) (citation and brackets omitted).[5]

Appellant waived this claim. At the Tender Years hearing, Appellant argued that because Mendoza's "habit . . . of saying okay after someone respond[ed] to a question," made the interview "too suggestive and unreliable for use under the Tender Years law." N.T., June 6, 2024, at 29. He argued that the "repeated okay implies to the child that she's giving the information that the interviewer is looking for." ***Id.*** He did not otherwise argue the statements were inadmissible. He therefore waived the claim he has raised on

---

[5] In addition, the Tender Years Exception requires that "the proponent of the statement notif[y] the adverse party of the proponent's intention to offer the statement and the particulars of the statement sufficiently in advance of the proceeding[.]" 42 Pa.C.S. § 5985.1(b). There is no contention the Commonwealth did not provide the requisite notice in this case.

appeal, that is, that the statements were not reliable and the court failed to analyze the circumstances of the statements to determine if there were sufficient indicia of reliability. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").

Further, even if he had raised the claim, we would conclude it lacks merit. At the Tender Years hearing, the trial court heard testimony from A.J.H. and Mendoza and watched the video recordings of the interviews. Based on the information the court received, including that E.R.J. made statements to A.J.H. within 20 to 30 minutes of A.J.H. discovering the abuse and that the interviews took place four days after the discovery, we would not find the court abused its discretion in admitting the interviews.

Judgment of sentence affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/13/2026